603 So.2d 1377 (1992)
Denise C. MARTIN, as Personal Representative of the Estate of Richard Scott Martin, Deceased, Appellant,
v.
VENICE HOSPITAL and Gondolier Investment Co., Inc., Appellees.
No. 91-03399.
District Court of Appeal of Florida, Second District.
August 26, 1992.
*1378 Michael D. Eriksen of Romano, Eriksen & Cronin, West Palm Beach, for appellant.
Claire Hamner Matturro of Dickinson, Gibbons, Shields, Partridge, Dahlgren & Collins, P.A., Sarasota, for appellees.
CAMPBELL, Judge.
Appellant, the widow of a construction worker who was electrocuted while working on a parking garage for appellee hospital, challenges the final summary judgment entered in favor of the hospital. We reverse because we believe that genuine issues of material fact remain.
At the time of the accident, the hospital had a "handshake agreement" with a construction company, Barton-Malow, for the construction of the parking garage. The project was being coordinated by the OAM team, a group composed of representatives of the owner-hospital, the architect and the construction manager, Barton-Malow. Barton-Malow brought decedent's employer, Speeler Marine Corporation, to the site to perform test piling work prior to beginning construction.
Running down the middle of the site for the proposed garage was an uninsulated 7,620-volt power line. On the morning of the accident, the Speeler crew was using a crane to move an air compressor from one location on the site to another. It was decedent's job to hold onto the suspended compressor and, by giving signals to the crane driver, direct the crane around the high-voltage wires. During this maneuver, the crane's boom touched the wires, electrocuting decedent.
In her complaint, decedent's widow alleged that the hospital had undertaken to do its own contracting for the parking garage and remained actively involved in supervising the work and the scheduling, and thereby had a duty to the workers on its property that it breached when it failed to ensure that the overhead lines were relocated before it allowed the test piling crew to go on site.
The liability of the hospital, as property owner, depends upon the degree to which the hospital actively participated in the construction. As stated by the Florida Supreme Court:
[T]he owner may be held liable if he has been actively participating in the construction to the extent that he directly influences the manner in which the work is performed. Conversely, if the owner is a passive nonparticipant, exercising no direct control over the project, he cannot be held liable. To impose liability upon an owner who is not an employer as defined by the statute, one or more specific identifiable acts of negligence, i.e., acts either negligently creating or negligently approving the dangerous condition resulting in the injury or death to the employee, must be established.
Conklin v. Cohen, 287 So.2d 56, 60 (Fla. 1973).
Appellee hospital moved for summary judgment on two alternative grounds: (1) The hospital was a passive, nonparticipating owner whose control over the project was insufficient to create duties of care to the decedent; and (2) if the hospital did retain enough control over the project to create duties of due care to the decedent, that control would thereby render the hospital the statutory employer of the decedent under the worker's compensation laws of Florida and make it immune from tort liability for the death of decedent.
*1379 In entering summary judgment for the hospital the trial judge did not specify upon which of the hospital's two alternative theories he based his decision.
We agree with appellant that the facts presented at the hearing on the motion for summary judgment raise a legitimate dispute as to whether the hospital, as owner, did exercise such control over the scheduling and the test piling work that it could be said to have negligently created or approved a dangerous condition so as to be liable in tort for the death of decedent.
John Dickinson was Barton-Malow's project administrator for the parking garage project. He testified in deposition that the power lines and the easements were owned by the hospital and Florida Power and Light (FPL) and that Barton-Malow had no authority over the lines. According to Dickinson, removal of the lines had to be initiated by the hospital or FPL; Barton-Malow could do nothing without their express cooperation. Dickinson further testified that although Barton-Malow could advise the hospital to relocate the lines, the lines could not be relocated unless the hospital made the decision to do it. As Dickinson said, the hospital was the captain of the OAM team and got to "call the plays."
Dickinson's testimony thus creates an issue as to whether the hospital negligently approved the scheduling of the test piling work and/or the decision to allow the utility lines to remain, both alleged to be interrelated causes of the accident. On this basis, we conclude that a genuine issue of material fact remained as to that issue and, for that reason, summary judgment was improper.
We must also address the hospital's alternative theory that it was immune from suit under the worker's compensation statute. Under the worker's compensation law, an employer or contractor is immune from a third-party tort suit if it is liable to secure worker's compensation coverage. We conclude that, under these circumstances, even though the hospital may have retained sufficient control over that portion of the work which resulted in decedent's death to be liable for his death in tort, there has been no evidence presented that would support a finding that the hospital was in such overall control as to be liable as an employer or contractor to secure worker's compensation coverage. See Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954).
While the evidence presented does not support a finding that the hospital was acting as its own general contractor so as to be required to furnish worker's compensation coverage, this conclusion, as we have indicated, does not preclude us from finding that evidence of an owner's retention of sufficient control over certain aspects of the work may subject that owner to tort liability for incidents that occur in the course of those aspects of the work. Conversely, that control need not be such as would impose worker's compensation liability. Crawford v. Florida Steel Corp., 478 So.2d 855 (Fla. 1st DCA 1985).
Finally, the hospital raised by way of affirmative defense the issue of decedent's negligence being the sole proximate cause of his death. Appellee argues that we should affirm the summary judgment on the basis of that affirmative defense. We must disagree. This issue was not argued to the court below as a basis for granting the summary judgment, and we cannot conclude that all the facts have been sufficiently developed in regard to that issue. We therefore decline to consider it in this appeal.
Reversed and remanded for treatment consistent herewith.
LEHAN, C.J., and THREADGILL, J., concur.