916 P.2d 1324

Roland N. HARGER, Sr. and Connie A. Harger, Plaintiffs–Petitioners,

v.

STRUCTURAL SERVICES, INC. and Jaynes Corporation, Defendants–Respondents.

Eloy R. ROMERO, Petitioner–Respondent,

v.

SHUMATE CONSTRUCTORS, INC. and Transamerica Insurance Group, Respondents–Petitioners,

and

Fay's Painting Company and United States Fidelity & Guaranty Company, Employer and Insurer.

Roland N. HARGER, Sr. and Connie A. Harger, Plaintiffs–Respondents,

v.

STRUCTURAL SERVICES, INC., Defendant–Petitioner,

and

Jaynes Corporation, Defendant.

Nos. 22,527, 22,530 and 22,533.

Supreme Court of New Mexico.

April 17, 1996.

Paul S. Wainwright, P.A., Paul S. Wainwright, Albuquerque, for Harger.

Beall, Biehler & Bannerman, Larry D. Beall, Lisa P. Ford, Nancy L. Stratton, Albuquerque, for Structural Services, Inc.

Butkus & Reimer, P.C., Gary J. Cade, Albuquerque, for Shumate Constructors, Inc. and Transamerica Insurance Group.

Will Ferguson & Associates, Donald M. Pinnock, Albuquerque, Cindi L. Pearlman, P.C., Tijeras, for Romero.

Miller, Stratvert, Torgerson & Schlenker, P.A., Thomas R. Mack, Lyman G. Sandy, Thomas M. Domme, Albuquerque, for Jaynes Corporation.

## OPINION

MINZNER, Justice.

In this appeal we consider the application and effect of NMSA 1978, Section 52–1–22 (Repl.Pamp.1991), a part of the Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1991 & Cum.Supp.1995) (Act). Section 52–1–22 sometimes imposes liability for the payment of workers' compensation benefits to a worker on someone other than the worker's actual employer. Section 52–1–22, however, expressly excludes the employer of an independent contractor from liability. In this opinion we will use the term "statutory employer" to describe someone upon whom Section 52–1–22 imposes liability for paying compensation benefits, but we note here that the term "constructive employer" is probably more descriptive.

Section 52–1–22 reads as follows:

**52–1–22. Work not casual employment.**

As used in the Workers' Compensation Act, unless the context otherwise requires,

where any employer procures any work to be done wholly or in part for him by a contractor other than an independent contractor and the work so procured to be done is a part or process in the trade or business or undertaking of such employer, then such employer shall be liable to pay all compensation under the Workers' Compensation Act to the same extent as if the work were done without the intervention of such contractor. The work so procured to be done shall not be construed to be "casual employment".

The Court of Appeals opinion from which the present appeal arises consolidated two cases, *Romero v. Shumate Constructors, Inc.* and *Harger v. Structural Services, Inc.*, 119 N.M. 58, 888 P.2d 940 (Ct.App.1994), *cert. granted,* 119 N.M. 21, 888 P.2d 467 (1995). The two cases illustrate the potential operation of Section 52–1–22 in the context of a general contractor and its subcontractors. Initially, Section 52–1–22 identifies the worker's statutory employer. *Romero* illustrates the initial identification. Then the question that logically follows is whether a statutory employer may claim the immunity from tort liability generally conferred on employers by the Act's exclusivity provisions. *See* §§ 52–1–6(E), –8, –9. *Harger* illustrates the significance of the initial identification in resolving the second question. Because the Court of Appeals fully laid out the facts of the two cases, we will not repeat them here. We will include additional facts as relevant to our discussion.

The Court of Appeals held that the relevant subcontractors were not independent contractors for purposes of Section 52–1–22. *Romero,* 119 N.M. at 69, 888 P.2d at 951. Consequently, the Court concluded that the general contractors were the employers responsible for paying workers' compensation benefits. Finally, the Court concluded that the general contractor sued in tort in *Harger* was immune under the Act. *Id.* at 70, 888 P.2d at 952. In reaching its opinion, the Court of Appeals rejected the common-law emphasis on the "right-to-control" in distinguishing an employee from an independent

contractor. Rather, the Court adopted a special test to serve the purposes it had identified as underlying Section 52–1–22. While the test is thoughtful and would serve well the policies identified by the Court, we were not persuaded that those policies are either explicit or implicit in the Act. Accordingly, we granted petitions for certiorari to address two central questions: (1) whether the Court of Appeals correctly construed the term "independent contractor" in Section 52–1–22; and (2) whether the Court of Appeals correctly concluded that an employer liable for workers' compensation benefits under Section 52–1–22 may claim immunity from tort.

■ We conclude that the term "independent contractor" in Section 52–1–22 should be construed as a common-law term; that is, it should continue to be construed as it has been construed in cases arising under the Act. However, for purposes of clarifying our case law, we adopt the Restatement (Second) of Agency approach for determining whether one acting for another is an independent contractor. *See* Restatement (Second) of Agency § 220(1) (1958). While this approach emphasizes the "right-to-control," it recognizes the significance of a variety of factors in evaluating the "right-to-control." Further, we conclude under both our cases and the Restatement (Second) of Agency approach that the Court of Appeals erred in characterizing the two general contractors in this case as statutory employers under Section 52–1–22 as a matter of law. Finally, we conclude that a statutory employer liable under Section 52–1–22 for workers' compensation benefits is immune from tort liability the same as are other employers. We affirm in part, reverse in part, and remand for further proceedings.

**I. Independent Contractor Status**

The Court of Appeals relied on contemporary public policy considerations to ascribe a modern definition of "independent contractor" to the Act's use of that term. Relying on the premise that the Act should be far-

reaching, the Court of Appeals concluded that "the legislature intended a narrower class of employers to escape workers' compensation liability than can escape vicarious tort liability under the common law." *Romero,* 119 N.M. at 66, 888 P.2d at 948. To give effect to this legislative intent, the Court of Appeals adopted a test for determining independent contractor status that departed from existing New Mexico case law. The Court determined that a subcontractor would not be an independent contractor for purposes of Section 52–1–22 unless the subcontractor's relationship to the general contractor survived both a "right-to-control" test and a "relative-nature-of-the-work" test. *Id.* at 67, 888 P.2d at 949. The Court identified the Act's basic purpose as ensuring that industry carry the burden of compensating workers for injuries they suffered in the course of their employment. Therefore, by adopting a stricter test for independent contractors, the Act would cover a broader category of workers. While the policy considerations identified by the Court of Appeals majority are undoubtedly sound, we do not believe they reflect the legislature's intent as expressed in the language currently contained in Section 52–1–22.

The legislature enacted Section 52–1–22 in 1917 in a form close to its present form as part of New Mexico's first workers' compensation legislation. *See* 1917 N.M.Laws, ch. 83, § 12(*o*). Workers' compensation liability attaches to a party other than the employer if two conditions are met: (1) that the work is done by "a contractor other than an independent contractor," and (2) that the work is "a part or process in the trade or business or undertaking" of the employer of the contractor. 1929 N.M.Laws, ch. 113, § 12(*o*). The only modification of this section has been the addition of the terms "or undertaking" to the phrase "in the trade or business of such employer." *See id.* Apart from this slight modification of the second condition, the legislature has retained the express exclusion embodied in the original provision for employers of independent contractors in all subsequent versions of the Act. *See id.;* 1937 N.M.Laws, ch. 92, § 6(*o*); 1965 N.M. Laws, ch. 295, § 15; 1989 N.M.Laws, ch. 263, § 16.

Section 52–1–22 preceded Section 52–1–23 in the 1917 legislation. Section 52–1–23 currently reads:

### 52–1–23. Contractor becoming employer in casual employment.

For purposes of the Workers' Compensation Act [this article], where any employer procures any work to be done wholly or in part for him by a contractor where the work so procured to be done is casual employment as to such employer, then such contractor shall become the employer.

The text of Section 52–1–23, like the text of Section 52–1–22, has remained essentially unchanged from the original. *See* 1917 N.M. Laws, ch. 83, § 12(p).

In these two statutes the legislature apparently attempted to provide a general answer or answers to the question of who should be considered the employer for purposes of the Act when one employer contracts with another employer or with an employee. Under Section 52–1–23, when the work so procured is casual employment as to the contractor's employer, the "contractor shall become the employer." Section 52–1–23. However, under Section 52–1–22, if the work so procured "is a part or process in the trade or business or undertaking of such employer," and the contractor involved is *not* an independent contractor, then the employer shall be treated as the employer under the Act, regardless of whether the work so procured is casual.[1] Section 52–1–22.

 In initially incorporating and subsequently retaining the common-law concept of "independent contractor," the legislature probably relied on certain rules of construction. "The interpretation of well-defined words and phrases in the common law car-

---

1. "Casual employment" is not defined in the Act. Professor Larson defines it as employment that is "irregular, unpredictable, sporadic, and brief."

1C Arthur Larson, *The Law of Workmen's Compensation* § 51.00 (1995).

ries over to statutes dealing with the same or similar subject matter." 2B Norman J. Singer, *Sutherland Statutory Construction* § 50.03, at 103 (5th ed. 1992). "Furthermore, common-law meanings are assumed to apply even in statutes dealing with new and different subject matter, to the extent that they appear fitting and in the absence of evidence to indicate contrary meaning." 2B *id.* Although "the meaning of [the] terms 'independent contractor,' 'employee,' and 'employer' is determined in the light of the statutory purpose without reference to common-law meanings in social welfare legislation," 2B *id.* § 50.03, at 105 n. 3, we need persuasive evidence of legislative intent in order to justify departing from the common-law meanings of such terms.

Section 52–1–22 is drafted quite differently than corresponding statutes in other states, which typically impose liability for compensation benefits on a general contractor or other remote employer only when the worker's immediate employer is uninsured. *See* 2A Larson, *supra,* § 72.31(a); *see also, e.g.,* Fla.Stat. ch. 440.10(1)(b) (1993); Mo.Rev.Stat. § 287.040 (1994). We recognize the force of Judge Bosson's reminder that the Act is a "legislative scheme ... to keep the claimant off the welfare rolls," and it does not "provide a complete tort recovery for compensation of all damages suffered." *Romero,* 119 N.M. at 73, 888 P.2d at 955 (Bosson, J., dissenting) (quoting *Continental Ins. Co. v. Fahey,* 106 N.M. 603, 606, 747 P.2d 249, 252 (1987) (alteration in original)). The spareness of the language in Sections 52–1–22 and –23, as well as the age of the statutes, also suggests a more limited policy determination or fewer specific objectives than more recently enacted statutes from other jurisdictions may reflect. In the absence of any additional special statutory definition in the ensuing versions of the Act, we think the legislature more likely than not retained the express exclusion in Section 52–1–22 in reliance on the term "independent contractor" having had an adequate judicial treatment in cases arising under the Act.

In workers' compensation cases, this Court has adhered to the common-law rule that, in determining whether a person is or is not an independent contractor, the principal consideration is the right to control. *Scott v. Murphy Corp.,* 79 N.M. 697, 700, 448 P.2d 803, 806 (1968); *Roybal v. Bates Lumber Co.,* 76 N.M. 127, 129, 412 P.2d 555, 556 (1966); *Campbell v. Smith,* 68 N.M. 373, 377, 362 P.2d 523, 525–26 (1961). Although an employer exercises authority or control over both independent contractors and employees, it is "the character of such authority or control [that] is the usual and generally accepted" distinction between independent contractors and employees. *Burruss v. B.M.C. Logging Co.,* 38 N.M. 254, 257, 31 P.2d 263, 264 (1934). The *Burruss* Court explained that the employer controls the result the independent contractor achieves, but "when the control descends to the details or to the means and methods of performance," the independent contractor becomes a servant or employee. *Id.*

Similarly, Restatement (Second) of Agency defines a servant as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Section 220(1).

> The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants.

*Id.* cmt. e. While the meaning we attribute to a legal term of art such as "independent contractor" is not capable of exact definition, this meaning has provided an adequate basis in the past for courts to resolve particular disputes presented for judicial resolution. Nevertheless, as the Court of Appeals noted, "different results occurred under similar facts in these two cases[,] and because of the confusion emanating from the statutory-employer provision, we consolidated these appeals in order to revisit this enigmatic section of the Workers'. Compensation Act." *Romero,* 119 N.M. at 62, 888 P.2d at 944.

For purposes both of clarifying this enigmatic section of the Act and providing guidance in future cases, we now adopt the factors and approach contained in Restatement (Second) of Agency Section 220 as consistent with both our case law and the present language of the statute.

■ In defining the term "independent contractor," we adopt the approach taken in Restatement (Second) of Agency Section 220, "Definition of Servant" (distinguishing servants from independent contractors for purposes of tort liability). Further, Section 2 defines an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent." Restatement (Second) of Agency § 2, "Master; Servant; Independent Contractor." Comment D to Section 2(3) provides that:

> an employee is a servant in the common law meaning.... In some statutes ... the term "employee" has been given a much broader meaning than that given herein to the term "servant". This has been the tendency of the interpretation of both federal and state acts dealing with social security, unemployment insurance, minimum wage, fair labor practices and similar matters.

After examining some of the federal authority cited by *Sutherland Statutory Construction, supra*, § 50.03, at 105 n. 3, we are satisfied that the Restatement (Second) of Agency is consistent with the approach taken in those cases, and thus it provides sufficient flexibility for the judicial interpretation of Section 52–1–22 to further the legislature's apparent purpose. *Compare Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–50, 91 L.Ed. 1947 (1947) (construing the Social Security Act and stating: "Obviously control is characteristically associated with the employer-employee relationship, but in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which

they render service.... It is the total situation that controls.") *with United States v. Silk*, 331 U.S. 704, 719, 67 S.Ct. 1463, 1471, 91 L.Ed. 1757 (1947) (construing the Social Security Act and stating: "It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors."). We are also satisfied that the Restatement (Second) of Agency approach will provide greater clarity than our existing cases for courts and litigants faced with novel factual situations, and thus it will advance judicial economy as the Court of Appeals sought to do in its proposed test. Finally, we are satisfied that we should not affirm the Court of Appeals test because it would effectuate a greater policy change than can be textually supported. Under these circumstances, legislative action rather than judicial interpretation is required.

■ For these reasons, we reject the Court of Appeals' holding "that the legislature intended a narrower class of employers to escape workers' compensation liability than can escape vicarious tort liability under the common law." *Romero*, 119 N.M. at 66, 888 P.2d at 948. While we disagree with the Court of Appeals' characterization of "independent contractor," we agree with its analysis of the second condition. *See id.* at 69–70, 888 P.2d at 951–52. "The meaning of 'undertaking' to be used in this context is the ordinary dictionary meaning." *Id.* at 70, 888 P.2d at 952. "[T]he added phrase should be read expansively." *Id.*

## II. Statutory Employer Immunity

The Court of Appeals construed Section 52–1–22 as having two purposes. The first and primary purpose was to make a general or prime contractor liable for benefits to its subcontractors' employees. The second and subordinate purpose was to allow such a general contractor to take refuge under the Act's exclusivity provisions, making it immune from tort liability. The Court of Appeals concluded that general contractors who qualify as employers under Section 52–1–22

are immune in tort if they contractually assure insurance coverage for their subcontractor's employees. *Romero*, 119 N.M. at 64, 888 P.2d at 946. The Court recognized a significant trend toward granting immunity even in cases in which the subcontractor is insured and even when the worker has received benefits under the subcontractor's policy. *See* 2A Larson, *supra*, § 72.31(b), at 14–209 to –224. The rationale behind this trend is that the general contractor retains back-up liability to encourage it to ensure that its subcontractors maintain their insurance coverage. *Romero*, 119 N.M. at 64, 888 P.2d at 946. The Court of Appeals noted that it had gone "part of the way toward adopting this trend by holding that general contractors who qualify as statutory employers are immune if they contractually assure insurance coverage to employees of the subcontractor." *Id.* (citing its prior opinion in *Quintana v. University of Cal.*, 111 N.M. 679, 682, 808 P.2d 964, 967 (Ct.App.), *cert. denied*, 111 N.M. 678, 808 P.2d 963 (1991)). In *Quintana*, the Court of Appeals determined that employers liable under Section 52–1–22 for the workers' compensation benefits of an uninsured subcontractor's injured employees were entitled to the immunity afforded by the Act's exclusivity provisions. 111 N.M. at 681–82, 808 P.2d at 966–67.

■ The question here is whether the legislature intended to include statutory employers under Section 52–1–22 within the general definition of employers who are subject to the Act's terms, and who, in return, are immune from tort liability under the Act's exclusivity provisions.[2] We hold that such employers are so included.

Whether an employer liable for paying benefits under Section 52–1–22 is entitled to tort immunity is ultimately a question of statutory interpretation. When the general contractor is made the employer for purposes of compensation, it "is obvious that he should enjoy the regular immunity of an employer from third party suit ... and the great majority of cases have so held." *See* 2A Larson, *supra*, § 72.31(a), at 14–199.

In New Mexico, Section 52–1–22 does not condition a remote employer's liability for

2. In pertinent part, the Act's exclusivity provisions are as follows.

The Workers' Compensation Act provides exclusive remedies. No cause of action outside the Workers' Compensation Act shall be brought by an employee or dependent against the employer or his representative, including the insurer, guarantor or surety of any employer, for any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act. Nothing in the Workers' Compensation Act, however, shall affect or be construed to affect, in any way, the existence of or the mode of trial of any claim or cause of action that the worker has against any person other than his employer or another employee of his employer, including a management or supervisory employee, or the insurer, guarantor or surety of his employer.

Section 52–1–6(E) (effective Jan. 1, 1992).

Any employer who has complied with the provisions of the Workers' Compensation Act [this article] relating to insurance or any of the employees of the employer, including management and supervisory employees, shall not be subject to any other liability ,whatsoever for the death of or personal injury to any employee, except as provided in the Workers' Compensa-

tion Act, and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common-law rights and remedies for and on account of such death of, or personal injury to, any such employee and accruing to any and all persons whomsoever, are hereby abolished except as provided in the Workers' Compensation Act.

Section 52–1–8.

The right to the compensation provided for in this act [Chapter 52, Article 1 NMSA 1978], in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

Section 52–1–9.

compensation benefits upon any subcontractor or immediate employer being uninsured. Moreover, Section 52-1-22 contains an express exception for employers of independent contractors. Thus, its purpose cannot fairly be described as making general contractors liable for compensation benefits for employees of uninsured subcontractors without regard for the nature of the employment relationship. *See Romero*, 119 N.M. at 64, 888 P.2d at 946. Unless we adopt a new meaning for the term "independent contractor," our statute's reach is narrower.

The legislature apparently intended the responsibility for the payment of workers' compensation benefits arising under Section 52-1-22 to be primary. That is, the employer meeting the criteria of Section 52-1-22 does not serve merely as a back-up to the contractor. Under the terms of Section 52-1-22, the employer's liability is not contingent upon the failure of any party to obtain insurance coverage. To the contrary, once the requirements of Section 52-1-22 are met, the employer is liable "to the same extent as if the work were done without the intervention of such contractor." *Id.* This is primary liability not contingent on additional factors.

■■■■■ Having determined that the legislature intended to impose primary liability on an employer meeting certain requirements under Section 52-1-22, we must conclude that employers within the meaning of Section 52-1-22 are subject to the Act's terms in the same manner as any other employer, and they are entitled to the same benefits. In view of the dual purposes of Section 52-1-22, we hold that an employer responsible for paying workers' compensation benefits under this section may claim the immunity conferred by the Act's exclusivity provisions, provided that the employer has complied with the Act's insurance provisions. If an employer has failed to comply with the

insurance provisions, the injured employee may sue under the Act or, in the alternative, sue in tort. *See Shores v. Charter Servs., Inc.*, 106 N.M. 569, 570, 746 P.2d 1101, 1102 (1987). We agree with the Court of Appeals that an employer may satisfy its obligation to comply with the insurance provisions by providing insurance through a third party. *See Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 681, 884 P.2d 832, 837 (Ct.App.), *cert. denied*, 118 N.M. 585, 883 P.2d 1282 (1994). However, general contractors are not entitled to immunity whenever or because they "contractually assure" insurance coverage to employees of their subcontractors. Section 52-1-22 has a more limited scope.

### III. Application to Facts

■■■■■ The final question is whether Shumate and Jaynes are employers under Section 52-1-22 as a matter of law. The Court of Appeals determined that they were. The underlying facts are not in dispute, so summary judgment is proper. *Westgate Families v. County Clerk of Inc. County of Los Alamos*, 100 N.M. 146, 148, 667 P.2d 453, 455 (1983) ("If the facts of a case are not in dispute, but only the legal effect of the facts is presented for determination, then summary judgment may be properly granted."). The resolution of this issue depends upon interpretation of both documentary evidence and the Act. Consequently, this Court is in as good a position to draw its own conclusions as the Court of Appeals, the district court, and the workers' compensation judge. *Verchinski v. Klein*, 105 N.M. 336, 338, 732 P.2d 863, 865 (1987). The Court of Appeals relied on two factors to make its determination, as a matter of law, that the relevant contractors were not independent contractors: the contractual right of control and the right to terminate the relationship without liability.[3] We do not believe these factors are sufficient to support that characterization.

---

**3.** In their motions for summary judgment, both Romero and Jaynes relied solely on contractual provisions to show that the general contractors had the right of control over the subcontractors. No materials or affidavits were submitted to show that the general contractors or their agents exercised actual control of the subcontractors' activities on the jobsite. The exercise of direct control over the subcontractors' workers would support the inference that the right of control existed. We disapprove of any suggestion to the contrary in *Quintana*. To the extent *Quintana*

## A.

In determining whether a person is an independent contractor or an employee, we have inferred the existence of the right of control, or the existence of the employer-employee relationship, from such factors as direct evidence of the exercise of control, or the right to terminate the employment relationship at will, by either party, and without liability. *See Burruss,* 38 N.M. at 258, 31 P.2d at 265; *see also* 1B Larson, *supra,* § 44.35(a). Our opinions also suggest other factors such as (1) the right to delegate the work or to hire and fire assistants, or (2) the method of payment, whether by time or by the job. *See, e.g., Roybal,* 76 N.M. at 129–30, 412 P.2d at 557; *Nelson v. Eidal Trailer Co.,* 58 N.M. 314, 270 P.2d 720 (1954); *Bland v. Greenfield Gin Co.,* 48 N.M. 166, 146 P.2d 878 (1944). However, these considerations are not inclusive. We have emphasized that what may be a satisfactory test in many cases may not be satisfactory under different circumstances. *Huff v. Dunaway,* 63 N.M. 121, 127, 314 P.2d 722, 726 (1957); *Bland,* 48 N.M. at 171, 146 P.2d at 881. We agree with Chief Justice Watson, writing for the Court in *Burruss,* that:

> If any proposition in connection with this question may be said to be settled, it is that there is no single nor sure criterion. Every case presents its own combination of facts, from which the resultant must be arrived at. A fact found controlling in one combination may have a minor importance in another.

38 N.M. at 256–57, 31 P.2d at 264. In specific situations, other factors may be significant to determine whether the employer has the right of control.

Restatement (Second) of Agency suggests several additional considerations, for example: whether the party employed engages in a distinct occupation or business; whether or not the work is a part of the employer's regular business; the skill required in the particular occupation; whether the employer supplies the instrumentalities, tools, or the place of work; the duration of a person's employment, and whether that person works full-time or regular hours; or whether the parties believe they have created the relationship of employer and employee, insofar as this belief indicates an assumption of control by one and submission to control by the other. *See* Restatement (Second) of Agency, *supra,* § 220 & cmts. h–m.

All of these considerations, factors, or tests are useful in determining the nature of a particular employment relationship. The Court of Appeals has used the relative-nature-of-the-work test since *Burton v. Crawford & Co.,* 89 N.M. 436, 439–40, 553 P.2d 716, 719–20 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976). *E.g., Whittenberg v. Graves Oil & Butane Co.,* 113 N.M. 450, 456–57, 827 P.2d 838, 844–45 (Ct.App. 1991), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992). We hold that any of the factors we have mentioned may be considered. However, no particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive. Rather, the totality of the circumstances should be considered in determining whether the employer has the right to exercise essential control over the work or workers of a particular contractor. If so, that contractor cannot be considered to be an independent contractor for purposes of Section 52–1–22.

## B.

Any determination based on only one or two of the factors we have described, and contrary to inferences supported by the remainder of the evidence, would need to be of such a clear and definite nature as to be nearly overwhelming. The evidence reviewed by the Court of Appeals regarding the contract provisions between the general contractors and subcontractors in these two cases is not of this nature.

First, there is considerable evidence pointing towards independence and away from an

suggested that the relationship between the general contractor and the employees of a subcontractor had little or no importance, it is overruled.

employment relationship. Both subcontractors had agreed to perform the work on a lump-sum basis, and both subcontractors furnished the necessary materials, tools, and equipment to accomplish their work.[4] In addition, the record suggests that both subcontractors operated as distinct businesses, and that both subcontractors had the right to hire and fire assistants or employees as they saw fit.

In contrast, the contract provisions showing that an employment relationship existed are only mildly persuasive, at best, that the general contractors involved retained sufficient right of control over the subcontractor's activities to render them employees. The contract provisions required Fay's to pay a certain wage scale and to apply contract payments to labor and materials costs before applying them to its other obligations. Fay's contract also required it to carry workers' compensation and liability insurance and to conform to Shumate's safety policy. Additionally, Fay's contract required it to remove the rubbish and debris resulting from its work, and if Fay's failed to do so, the contract allowed Shumate to clean up the worksite at Fay's expense. Jaynes' contract with Superior contained similar provisions. In addition, Superior's contract required it to complete its work according to a formal work schedule prepared by Jaynes and revised as the project progressed. The contract also gave Jaynes the right to hire additional workers or to contract with additional subcontractors if Superior failed to supply enough properly skilled workers or to maintain the work schedule.

Some of the above requirements mildly suggest the type of control that an employer might exercise over an employee, such as the requirement that the subcontractor conform to particular safety policies.[5] However, most suggest tangential concerns of the con-

tractor, such as possible mechanics' liens, which would have little to do with the means and manner of performance of the subcontractor's actual work; that is, the refurbishing of the wastewater units by Fay's and the installation of the plumbing improvements by Superior. Neither do we place much importance on provisions that require subcontractors to remove the rubbish and debris that they create. This requirement is merely part of the ultimate results that the subcontractor has agreed to deliver.

■ In addition, this Court has recognized, as do courts in many other states, that the control essential to coordinate the several parts of a larger undertaking is distinguishable from control over the means and manner of performance of a contractor's work. *See Scott,* 79 N.M. at 700, 448 P.2d at 806; *Burruss,* 38 N.M. at 257, 31 P.2d at 265. Thus, the right to coordinate the performance of various subcontractors on a large project is not indicative of an employment relationship. Here the fact that Jaynes required Superior to adhere to a formal work schedule does not in itself suggest that Superior was subject to Jaynes' right of control. Apparently how Superior conducted its work to meet the schedule was for it to decide. If Jaynes had had the right to direct Superior's activities to conform to the work schedule this factor could be significant, but this was not the case.

The following comment from the Restatement (Second) of Agency helps explain the significance of the right of control in the context of this appeal.

*1. Control of the premises.* If the work is done upon the premises of the employer with his machinery by workmen who agree to obey general rules for the regulation of the conduct of employees, the inference is strong that such workmen are the servants

---

**4.** Superior's contract with Jaynes called for a lump-sum payment of $227,262; Fay's was to receive a total of $84,708 under its contract with Shumate.

**5.** A copy of Shumate's safety policy is not a part of the record nor has Romero described the

nature of this policy. Jaynes' entire safety policy consisted of the requirement that all subcontractors and their employees wear hard hats and proper safety shoes at all times, and refrain from wearing radio headsets on the jobsite.

of the owner, and this inference is not necessarily rebutted by the fact that the workmen are paid by the amount of work performed or by the fact that they supply in part their own tools or even their assistants. If, however, the rules are made only for the general policing of the premises, as where a number of separate groups of workmen are employed in erecting a building, mere conformity to such regulations does not indicate that the workmen are servants of the person making the rules.

Restatement (Second) of Agency § 220(2) cmt. L.

■ The Court of Appeals also determined that various contract provisions showed that the two general contractors had the right to terminate the agreements for reasons unrelated to a failure to complete the finished product properly. Therefore, the Court concluded that the "right-to-fire" factor also evinced an employment relationship. However, we find that this fact does not suggest a significant employment relationship. First, as Professor Larson points out, it is the *"absolute* right to terminate the relationship without liability" that is inconsistent with an independent relationship. 1B Larson, *supra,* § 44.35(a) (emphasis added). Professor Larson goes on to explain that:

> [T]he unqualified right to fire must be distinguished from the right to terminate the contract of an independent contractor for bona fide reasons of dissatisfaction, particularly when the right of termination for dissatisfaction is expressly reserved. The exercise of such a right is still consistent with the idea that a satisfactory end result is all that is aimed at by the contract.

*Id.* § 44.35(g) (footnote omitted).

Here the general contractors' right to declare a default and terminate the contracts represented a qualified right-to-fire based upon nonperformance of the agreement. Nonperformance of a construction contract may certainly be broader than the failure to complete a finished project properly. For example, in this instance Jaynes and Superior specifically agreed that time was of the essence, and they mutually agreed to. see to the performance of their respective work so the entire project would be completed according to the contract documents and work schedule. The agreement designated failure to adhere to the work schedule as a material breach. The contract also designated other conditions that would constitute nonperformance, such as the failure to supply enough skilled workers or proper materials, the failure to make prompt payment to workers, or the failure to follow public safety regulations or laws. Even Jaynes' ability to terminate the agreement in the event of nonperformance was not absolute; the contract required written notice and allowed three working days for Superior to cure any default. The termination provisions in Fay's contract with Shumate similarly related to nonperformance under their agreement and also required notice and an opportunity to cure. There is no absolute right to fire when the parties specifically agree upon the terms of the right to terminate the agreement based upon nonperformance. For this reason, the agreements at issue here are not inconsistent with an independent contractor relationship.

### C.

For these reasons, we conclude that the Workers' Compensation Administration correctly granted Shumate's motion for summary judgment and correctly denied Romero's. Romero failed to rebut Shumate's prima facie showing that there was no genuine issue of material fact regarding its relationship to Fay's or Romero and that Shumate was entitled to judgment as a matter of law. The district court erred in granting Jaynes' motion for summary judgment. Jaynes failed to make a prima facie showing that there was no genuine issue of material fact regarding its relationship to Superior or Harger and that Jaynes was entitled to judgment as a matter of law. Consequently, the question of whether SSI can claim the tort immunity of a coemployee is moot.

### IV. Conclusion

In ruling that the relevant general contractors are statutory employers and therefore immune from tort liability, the Court of Appeals relied on a growing trend to grant tort

immunity whenever a general contractor requires its subcontractor to be insured. The Court of Appeals thus adopted a construction of Section 52–1–22 that reflected a trend in other states arising partly from statutory changes and partly from cases construing them. On closer inspection, our statutes do not yet support such a construction. We conclude that in 1917 the legislature had in mind the independent-contractor relationship that supported vicarious liability at common law. We also conclude that subsequent legislative action has relied on the definition of that relationship contained in cases arising under the Act. Accordingly, until the legislature expresses a different intent, the term "independent contractor" is to be construed as it has been in those cases, insofar as the cases are consistent with the Restatement (Second) of Agency approach.

■ The Court of Appeals' decision regarding Romero is reversed, and the Administration's decision is affirmed. We reverse the Court of Appeals regarding Jaynes, but we affirm its judgment regarding SSI. On remand the district court shall vacate the summary judgments entered in favor of Jaynes and SSI in *Harger* and proceed in a manner consistent with this opinion. Our determination that Jaynes lacked the right to exercise essential control over Superior does not preclude a finding that Jaynes retained a sufficient level of control to create a duty of reasonable care to Superior's employees. *See Martin v. Venice Hosp.*, 603 So.2d 1377, 1379 (Fla.Dist.Ct.App.1992) (concluding that control over certain aspects of the work, sufficient for tort liability, is not equivalent to overall control sustaining workers' compensation liability); *see also DeArman v. Popps,* 75 N.M. 39, 43, 400 P.2d 215, 217 (1965) (rejecting assertion that any duty based on contractor's control would, as a matter of law, make workers' compensation the exclusive remedy). No costs are awarded.

**IT IS SO ORDERED.**

FROST, C.J., and RANSOM, BACA and FRANCHINI, JJ., concur.