2008-NMSC-015

179 P.3d 1209

**Carl HAMBERG, Plaintiff–Petitioner,**

v.

**SANDIA CORPORATION, d/b/a Sandia National Laboratories, Defendant–Respondent.**

**No. 30,391.**

Supreme Court of New Mexico.

Feb. 14, 2008.

Duane Lind, Albuquerque, NM, William H. Lazar, Tesuque, NM, for Petitioner.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Jocelyn Drennan, Kennedy, Moulton & Wells, P.C., Deborah D. Wells, Sandia Corporation, Charles Pechewlys, Albuquerque, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} Plaintiff brought this tort action against Defendant for injuries Plaintiff allegedly suffered while working at Defendant's facility. The issue in this case is whether Defendant is considered Plaintiff's special employer under the Workers' Compensation Act, NMSA 1978, Sections 52–1–1 to –70 (1929 and as amended), such that Defendant is immune from tort liability under the exclusivity provision, NMSA 1978, Section 52–1–8 (1989). We conclude as a matter of law that Defendant had the right to control the details of Plaintiff's work, thus making Defendant a special employer under the test established in *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 678–79, 884 P.2d 832, 834–35 (Ct.App. 1994). Because Defendant complied with the requirements of the Workers' Compensation Act, it is protected by the exclusivity provision. We therefore affirm the Court of Appeals, which upheld the district court's dismissal of Plaintiff's complaint.

## I. BACKGROUND

{2} Plaintiff, a graphic artist, was injured while working at Defendant's facilities. At the time of the accident, Plaintiff was directly employed by Orion International Technologies ("Orion"). Orion was under contract to provide various professional services to Defendant, including Plaintiff's position. This case thus involves two contracts: Plaintiff's employment contract with Orion, and Orion's services contract with Defendant.

{3} Under the employment contract, Orion pays Plaintiff an hourly wage; provides him with benefits, leave, and educational assistance; and evaluates his job performance. The services contract requires Orion, among other things, to provide certificates of workers' compensation insurance. Orion did, in fact, pay workers' compensation premiums for its employees, including Plaintiff. Defendant paid Orion a direct labor rate for each Orion employee who worked at Sandia, plus a

"Direct Labor Multiplier" component to cover Orion's overhead costs for each employee.

{4} The services contract limited the control that Defendant had over Orion's employees. Defendant was not allowed to make any employment decisions, such as hiring, firing, promotion, or benefits determinations, and it was not allowed to supervise Orion's employees. Defendant was, however, allowed to direct Orion to remove any person from the contract. Defendant was also entitled to have a delegated representative who could assign work, monitor technical performance, and inspect and accept the work of Orion's employees.

{5} Plaintiff was assigned to work for Defendant under the services contract as a graphic technologist. Plaintiff was injured after a direct employee of Defendant allegedly ordered Plaintiff to disassemble, move, and reassemble a large metal storage unit. Plaintiff alleges that this order violated the supervision provisions of the services contract.

{6} Plaintiff received workers' compensation benefits for his injury through Orion's insurer. Plaintiff now seeks to sue Defendant under a theory of negligence. Defendant moved for summary judgment on the basis that it was Plaintiff's special employer and that it had complied with the requirements of the Workers' Compensation Act. Plaintiff responded that he was an independent contractor and that Defendant had not paid workers' compensation insurance premiums as required by the Act. The district court granted summary judgment for Defendant, and the Court of Appeals affirmed.

## II. STANDARD OF REVIEW

{7} "We review de novo the granting of summary judgment, construing reasonable inferences from the record in favor of the party that opposed the motion. Summary judgment is prope[r] when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Blea v. Fields,* 2005–NMSC–029, ¶ 10, 138 N.M. 348, 120 P.3d 430 (citations omitted). We will construe all "reasonable inferences from the record in favor of the party that opposed the motion." *Id.*

## III. DISCUSSION

### A. PLAINTIFF'S EMPLOYMENT STATUS

{8} The exclusivity provision of the Workers' Compensation Act shields employers who comply with the Act from tort liability. Section 52–1–8. Thus, Defendant may be immune from tort liability if it has an employment relationship with Plaintiff. Plaintiff would have an employment relationship with Defendant if he was a direct employee, a statutory employee, or a special employee. In contrast, if Plaintiff was an independent contractor, he would not have an employment relationship with Defendant. Defendant was clearly not Plaintiff's direct employer. We turn next to the tests for statutory employment and special employment.

{9} Whether we apply the statutory employment or the special employment test depends on whether Defendant procured work or labor. A statutory employment relationship exists when " 'any employer procures any work to be done wholly or in part for him by a contractor other than an independent contractor and the work so procured to be done is a part or process in the trade or business or undertaking of such employer[.]' " *Harger v. Structural Servs., Inc.,* 1996–NMSC–018, 121 N.M. 657, 661, 916 P.2d 1324, 1328 (1996) (quoting NMSA 1978, § 52–1–22 (1989)). The statutory employer test thus applies when a defendant procures work. *Rivera,* 118 N.M. at 681, 884 P.2d at 837 (quoting *Word v. Motorola, Inc.,* 135 Ariz. 517, 662 P.2d 1024, 1026 (1983) (en banc)). For example, in *Chavez v. Sundt Corp.,* we applied the statutory employer test to a general contractor that had hired a subcontractor to perform electrical work. 1996–NMSC–046, ¶¶ 2, 12, 122 N.M. 78, 920 P.2d 1032. In contrast, the Court of Appeals declined to apply the statutory employer test in *Rivera* because the employer had contracted with another company to supply labor for its lumberyard, not to actually run the lumberyard. *Rivera,* 118 N.M. at 681, 884 P.2d at 837. In that situation, the Court of Appeals applied the special employment test. *Id.* at 678, 884 P.2d at 834.

{10} The statutory employment test does not apply to Plaintiff's relationship with Defendant. Defendant contracted with Orion for labor, not for work. The contract called for Orion to supply a graphic designer—a laborer. It did not call for Orion to perform Defendant's graphic design work. When a general employer (Orion) arranges labor for a third party (Defendant), we look to the special employment test. In concluding that the statutory employment test does not apply to Plaintiff, we necessarily conclude that Plaintiff is neither a statutory employee nor an independent contractor.[1]

{11} Before applying the special employment test, we must determine what that test should be. Defendant argues that the proper test for determining special employer status is the three-part test established in *Rivera*, 118 N.M. at 678–79, 884 P.2d at 834–35, which was followed by the Court of Appeals in this case. Under *Rivera*, both the general employer and the special employer are liable for workers' compensation when the following conditions are met: "(1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work." *Id.* (citing 1B Arthur Larson, *The Law of Workmen's Compensation* § 48.23, at 8–515 to –532 (1993)). This test arises out of the lent employee doctrine. *Hamberg*, 2007–NMCA–078, ¶ 10, 142 N.M. 72, 162 P.3d 909; *see also Rivera*, 118 N.M. at 681, 884 P.2d at 837.

{12} Plaintiff urges instead that we replace all three parts of the *Rivera* test with the *Harger* test, recasting special employment as a totality of circumstances test.[2]

*See Harger*, 121 N.M. at 667, 916 P.2d at 1334. Plaintiff bases this argument on the complexity of his employment relationship with Orion and Defendant, claiming that the *Rivera* test is only appropriate in relatively simple borrowed employee situations.

{13} We see no reason to depart from the test set out in *Rivera*. Although modern labor contracts may be complex, that complexity can be captured by the *Rivera* test's third part. In this case, we agree with the Court of Appeals that the first two parts of the *Rivera* test were met and were not seriously contested by Plaintiff. *Hamberg*, 2007–NMCA–078, ¶¶ 26, 29, 142 N.M. 72, 162 P.3d 909. The third part recognizes that the general employer and the special employer may "both exercise[ ] control over the employee and both benefit[ ] to some degree from the employee's work." Restatement (Third) of Agency § 7.03 cmt. d(2) (2006). Thus, Plaintiff must show not that Orion retained some control over his work, but rather that Defendant lacked the right to control his work.

{14} In his response to Defendant's motion for summary judgment, Plaintiff listed a number of disputed material facts. Assuming that the facts are true for this analysis, Plaintiff has still failed to raise an issue of material fact regarding Defendant's right to control. Plaintiff alleges that Orion maintained control over his hours of work, evaluated his job performance, provided all of his employment benefits, disciplined him when required, and could terminate his employment at will. Plaintiff also alleges that he was supervised by an Orion manager, that he owed certain duties to Orion, and that Orion's employees were sometimes physically

1. We have adopted the Restatement (Second) of Agency test for distinguishing between an independent contractor and a statutory employer. *Id.* (citing Restatement (Second) of Agency § 220(1) (1958)). In its opinion below, the Court of Appeals noted that "[t]he test that Plaintiff urges this Court to apply . . . is not the test for determining whether an employer can be considered a statutory employer, but rather is the test to be used in determining whether a contractor is an independent contractor[.]" *Hamberg v. Sandia Corp.*, 2007–NMCA–078, ¶ 14, 142 N.M. 72, 162 P.3d 909. To the extent that the Court of Appeals suggests that there are separate tests for statutory employer and independent contractor, we clarify that the statutory employer test is to be applied when the threshold requirement of "procurement of work" has been met, and that the independent contractor test is one element of the statutory employer test.

2. Although Plaintiff stated during oral argument that he only wished to replace the third part of the *Rivera* test with a totality of circumstances test, in his brief in chief he argued against use of the special employment test altogether because "the Restatement [*Harger*] approach is much broader than the special employment test" and that "the special employment test is applicable, if at all, in very limited circumstances."

segregated from Defendant's employees. These facts, assuming they are true, merely show that Orion retained some control over Plaintiff's work; they do not show that Defendant lacked control. We would expect no less from a special employment situation.

{15} Turning to Defendant's right to control, Plaintiff first argues that he is a skilled specialist, and therefore he is not subject to Defendant's control. We agree with the Court of Appeals that the right to control the details of a skilled specialist's work does not mean control over the " 'technical details[,]' " but means control over " 'the time and place of the services, the person for whom rendered, and the degree and amount of services.' " *Hamberg*, 2007–NMCA–078, ¶ 33, 142 N.M. 72, 162 P.3d 909 (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67.06, at 67–17 (2006) (footnotes omitted)). In the case that established this rule, the Arizona Supreme Court considered a situation where a welder was loaned from one company to another. *Carnes v. Indus. Comm'n*, 73 Ariz. 264, 240 P.2d 536, 539 (1952). Although the welder was highly skilled, such that the borrowing company could not direct the technical details of his work, the fact that he was told which tanks to repair and shown exactly where to patch leaks was sufficient to show control for the special employment test. *Id.* at 537, 539.

{16} In trying to argue that his specialized skills show that Defendant lacked the right to control, Plaintiff instead shows that his situation falls precisely under the scenario described in *Carnes*. Plaintiff alleged that he controlled "all the details of the conceptualization, design and creation of the projects he worked on[,]" while Defendant's role "was limited to assigning projects, monitoring technical performance and inspecting and accepting [Plaintiff's] work" and that these assignments "were limited to a description of a desired end product." These are the types of controls recognized by both *Larson* and *Carnes* as satisfying the special employment relationship.

{17} As a second argument against Defendant's right to control, Plaintiff describes an "elaborate contract" that refers to Plaintiff as a contractor and disclaims any employment relationship. As explained by the Court of Appeals, we look to the relationship's actual circumstances, not to how the parties define the relationship in their contracts. *Hamberg*, 2007–NMCA–078, ¶ 34, 142 N.M. 72, 162 P.3d 909. Therefore, these facts do not raise a genuine issue about Defendant's right to control.

**B. COMPLIANCE WITH THE WORKERS' COMPENSATION ACT**

{18} Because Defendant is Plaintiff's special employer, Defendant is immune from tort liability if it complies with the provisions of the Workers' Compensation Act. *Rivera*, 118 N.M. at 677, 884 P.2d at 833 (citing § 52–1–8). Defendant has complied by requiring Orion to carry workers' compensation insurance and by paying premiums through the "Direct Labor Multiplier" component of its contract with Orion. *See id.* at 680, 884 P.2d at 836. There is "more than a vague connection" between that multiplier and the benefits received by Plaintiff. *See St. Claire v. Minnesota Harbor Serv., Inc.*, 211 F.Supp. 521, 528 (D.C.Minn.1962); *see also Sorenson v. Colibri Corp.*, 650 A.2d 125, 127 (R.I.1994) (finding that the plaintiff's special employer had covered workers' compensation by "tak[ing] judicial notice that [the general employer] is not an eleemosynary corporation and would therefore include in its charge all necessary expenses together with an amount for profit").

{19} Our holding is consistent with the policy behind the Workers' Compensation Act:

[A]llowing an employee who has received workers' compensation benefits to maintain a tort action against his special employer[ ] destroys the compromise that is the foundation of the act. Such a construction would have the effect of encouraging litigation by employees that have received workers' compensation benefits, the exact opposite of what the Legislature intended.

*Sorenson*, 650 A.2d at 129. Allowing Plaintiff to sue the company that paid for his workers' compensation would "strike[ ] at the heart" of the Act. *See St. Claire*, 211 F.Supp. at 528.

## IV. CONCLUSION

{20} Defendant and Orion shared control over the details of Plaintiff's work, thus making Defendant Plaintiff's special employer. Defendant complied with the Workers' Compensation Act by requiring Orion to carry insurance and paying Orion a sufficient amount in addition to Plaintiff's hourly salary to cover overhead. Allowing Plaintiff to sue in tort under these conditions would undermine the policies of the Workers' Compensation Act. We affirm the Court of Appeals and uphold the district court's dismissal.

{21} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON and CHARLES W. DANIELS, Justices.