This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**SABRINA OWENS,**

Plaintiff-Appellant,

v. **No. 31,694**

**TRAMWAY RIDGE APARTMENTS, LLC; FABCO BUILDERS, INC.; SPRINGDOWN TRAMWAY, LLC; RAW TRAMWAY, LLC; BJ CREATIVE TRAMWAY, LLC; CAV TRAMWAY, LLC; MAV TRAMWAY, LLC; ED TRAMWAY, LLC; HLS PARTNERS TRAMWAY I, LLC; HLS PARTNERS TRAMWAY II, LLC; BMM TRAMWAY, LLC; KJM TRAMWAY, LLC; and HAMILTON ZANZE & COMPANY,**

Defendants-Appellees,

and

**LIBERTY MUTUAL INSURANCE COMPANY,**

Intervenor-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Lee & Ross

Michael C. Ross
Aaron Garrett
Albuquerque, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

Hatcher & Tebo, P.A.
Scott P. Hatcher
Santa Fe, NM

for Appellees

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1}      Sabrina Owens (Owens) was injured while walking down some steps in the parking lot of the Las Kivas Apartment Complex (the Complex) and sought to recover from the Defendant owners of the Complex (Appellees).[1] Appellees moved for summary judgment arguing that they were Owens' statutory employers and that, as such, her remedies were limited to those provided under the Workers' Compensation

---

[1] Except as required by context we will refer to Tramway Ridge Apartments, LLC and the twelve other LLCs that owned the property as "Appellees." We note that Appellees' answer brief did not fully comply with Rule 12-305(C)(1) NMRA. Advocates are reminded that the Appellate Rules promote the Court's efficient and timely resolution of issues on appeal and that failure to comply with them may have serious consequences for the parties. *See* Rule 12-312(B) NMRA.

Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1965, as amended through 2007). The district court granted the motion and we now reverse.

**BACKGROUND**

{2} Appellees contracted with Bernard/Allison Management Services, Inc. (Bernard/Allison) to provide property management services at the Complex. Owens was employed by Bernard/Allison as an assistant manager and received workers' compensation benefits from Bernard/Allison after the injury. She then sought to recover tort damages from Appellees for her injuries. Appellees moved for summary judgment, arguing that the undisputed facts showed that (i) Hamilton Zanze, the sole member and manager of Tramway Ridge Apartments, LLC, was responsible for management of the Complex on behalf of the other owners; and (ii) Bernard/Allison was not an independent contractor and it was engaged in work that was part of Hamilton Zanze's work. Appellees argued that they are statutory employers under the Act. The district court agreed and dismissed the complaint.

**DISCUSSION**

{3} Summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. Summary judgment is appropriate only when "reasonable minds cannot differ as to an issue of material fact." *Woodhull v. Meinel*, 2009-

NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126. "We are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Id.* (internal quotation marks and citation omitted). "To prevail in a summary judgment proceeding, a defendant need only make a prima facie showing of entitlement to summary judgment." *Quintana v. Univ. of Cal.*, 111 N.M. 679, 682, 808 P.2d 964, 967 (Ct. App. 1991), *overruled on other grounds by Harger v. Structural Servs., Inc.*, 1996-NMSC-018, 121 N.M. 657, 916 P.2d 1324. If a prima facie case is made, "the burden then shifts to the plaintiff to show at least a reasonable doubt as to whether a genuine issue of fact exists." *Id.* In the context of cases like this one, "[t]his [C]ourt has held that, where the material facts are undisputed and susceptible of but one logical inference, it is a conclusion of law whether the status of an employer-employee relationship exists." *Id.* In order to draw this legal conclusion, "however, there must not [exist] a disputed material fact." *Id.* We review the district court's grant of summary judgment de novo. *Woodhull*, 2009-NMCA-015, ¶ 7.

{4}     In addition to providing the exclusive remedy for work-related injuries to direct employees, Section 52-1-6(E), the Act provides the exclusive remedy to employees of a subcontractor, if the subcontractor (1) is not an independent contractor, and (2) the work "done is a part or process in the trade or business or undertaking of such

employer." Section 52-1-22. If both of these tests are met, an employer is deemed a statutory or constructive employer and the employees of its subcontractor are limited to remedies under the Act. *See Quintana*, 111 N.M. at 681, 808 P.2d at 966.

{5} In *Harger*, the Court examined the "right to control" test for determining whether a person is an independent contractor and rejected a narrow application of it. 121 N.M. at 663-64, 916 P.2d at 1330-31; *see Celaya v. Hall*, 2004-NMSC-005, ¶ 14, 135 N.M. 115, 85 P.3d 239. Instead, it "adopt[ed] the factors and approach contained in Restatement (Second) of Agency Section 220 [(1958)]." *Harger*, 121 N.M. at 664, 916 P.2d at 1331. Section 220 counsels that "[i]n determining whether one acting for another is a servant or an independent contractor," the fact finder may consider "the extent of control . . . the master may exercise over the details of the work[,]" as well as a number of other factors, such as "whether or not the one employed is engaged in a distinct occupation or business[,]" the way the one employed is paid, whether the parties conceive of their relationship as employee-employer or not, "whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work[,]" and "the kind of occupation, [and] whether . . . the work is usually done under the direction of the employer or by a specialist without supervision[.]" Restatement (Second) of Agency § 220(2) (hereinafter Restatement); *see Harger*, 121 N.M. at 667, 916 P.2d at 1334. Other factors include whether either

party has the right to terminate an employee at will and "the right to delegate the work or to hire and fire assistants." *Harger*, 121 N.M. at 667, 916 P.2d at 1334. "[N]o particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive." *Id.* Finally, "the control essential to coordinate the several parts of a larger undertaking is distinguishable from control over the means and manner of performance of a contractor's work. Thus, the right to coordinate the performance of various subcontractors on a large project is not indicative of an employment relationship." *Id.* at 668, 916 P.2d at 1335 (citations omitted).

{6}     In support of their motion for summary judgment, Appellees provided an affidavit by Mark Hamilton, president of Hamilton Zanze, which made a number of assertions to the effect that it had "full and complete control over all aspects of the operations of the management of the [Complex]" including the day-to-day work of Bernard/Allison employees. The affidavit addressed many of the factors in the Restatement. Attached to the affidavit was the "Property Management Agreement" between Appellees and Bernard/Allison detailing the contractual relationship between them. Appellees relied entirely on the affidavit and the contract to support their motion for summary judgment.

{7}     Our review of the affidavit and the Property Management Agreement convinces us that the Appellees failed to make a prima facie case entitling them to summary judgment. Assuming for purposes of analysis that the affidavit and the contract provide a collection of undisputed facts, we disagree that the facts presented are "susceptible of but one logical inference." *Quintana*, 111 N.M. at 682, 808 P.2d at 967. For example, the affidavit generally asserts Hamilton Zanze is the "asset management arm of the ownership of the [Complex]" and that "[m]anagement of its properties is part and parcel of the business of Hamilton Zanze." The affidavit also notes that if "day[-]to[-]day management of the . . . [Complex] was not carried out through Bernard/Allison, the owner would have carried out these tasks itself or hired a different third party." Yet nowhere does the affidavit assert that Hamilton Zanze actually performs "day-to-day management" of any of its properties. And use of the term "management" in the affidavit is ambiguous at best. Management can range from actual, personal day-to-day operation to the most general oversight of an asset's performance.

{8}     The type of management in play necessarily has an impact on the analysis required by *Harger* and the Restatement. The generalities noted in the affidavit can be read both to support and refute the assertion that Appellees should be deemed a statutory employer. The assertion that Hamilton Zanze and Bernard/Allison

7

employees spoke weekly by telephone and that Hamilton Zanze employees visited "as frequently as monthly" is hardly revelatory or susceptible of but one logical inference concerning the nature of the relationship. Similarly, the assertion that Bernard/Allison consulted with Hamilton Zanze about lease rates does not require any particular conclusion about the nature of the relationship. As owners of the property Appellees would have a natural interest in the cash flow from and net income of the property. That interest does not as a matter of logic lead to the sole inference that Appellees were statutory employers of Owens; it could simply mean that Appellees were careful of their investment.

{9} The Property Management Agreement on its face places wide responsibility on Bernard/Allison in managing the day-to-day operations of the Complex. The Agreement can also be read to give Bernard/Allison wide latitude in accomplishing its duties. For example, the listing of Bernard/Allison's "responsibilities and rights" and Appellees' "responsibilities and agreements" cannot be read to lead to but one logical inference as to the business relationship between the two. The Agreement does provide for consultation in some matters including budgets for the property, but on its face the Agreement is not susceptible of but one inference.

{10} Finally, but notably, the Agreement has no provision allowing Hamilton Zanze the power to remove Bernard/Allison employees. Paragraph eleven of the Agreement

8

stands in stark contrast to the assertion of such power in paragraph eleven of Mr. Hamilton's affidavit. This by itself creates a question of fact about the relationship between the parties precluding summary judgment.

{11} The ambiguity of Appellees' showing below coupled with Owens' factual assertions—to which we now proceed—demonstrate that summary judgment was improper.

{12} Owens provided the district court testimony from the vice president of asset management at Hamilton Zanze that Hamilton Zanze did not control the day-to-day management of the property and that Hamilton Zanze did not control how Bernard/Allison attracted tenants, collected rent, ensured payment on time, or evicted tenants. In response to Appellees' assertion that it "had authority to remove Bernard/Allison employees if they individually were performing poorly," the same witness provided deposition testimony that Hamilton Zanze was a client of Bernard/Allison and as such had influence over the staff working at the Complex, but had no legal authority to fire a Bernard/Allison employee. The same witness testified that the president and vice president of Hamilton Zanze considered the relationship between the two companies to be a client-provider relationship, rather than employer-employee relationship. Finally, the same witness testified that Hamilton Zanze's business was different from Bernard/Allison's. Considering this evidence in the light

9

most favorable to Owens, we conclude that she provided sufficient evidence to create a genuine issue as to whether Bernard/Allison was an independent contractor.

{13} We emphasize that the testimony outlined above is not meant to be an encyclopedic review of the record. It is simply enough by itself to demonstrate that summary judgment was improperly granted.

{14} We turn next to the second prong of Section 52-1-22: whether Bernard/Allison's work was "a part or process" of Hamilton Zanze's business or undertaking. If it is determined at trial that Bernard/Allison is an independent contractor, there would be no reason to proceed to analyze the second prong. Even if Bernard/Allison were not an independent contractor, however, we conclude that Owens presented sufficient evidence to overcome Appellees' prima facie showing as to this part of the test. Hamilton Zanze's president stated in an affidavit that its "business [is] to ensure that the management and operations of [the Complex] are carried out in a professional, safe[,] and economically feasible manner," and argued that property management was an essential part of this mission. Again, Owens presented testimony through Hamilton Zanze's vice president that Hamilton Zanze's business was "asset management . . . acquisitions, dispositions, fund-raising, investor relations, construction management." The vice president also testified that Bernard/Allison's core business differed from that of Hamilton Zanze, that Hamilton Zanze did not delegate the tasks essential to

10

investment in new properties to property management companies, and that Hamilton Zanze does not manage its properties with its own staff. Viewing this evidence in the light most favorable to a trial on the merits, we conclude that Appellant raised genuine issues of fact precluding summary judgment as to this element as well.

**CONCLUSION**

{15}    We reverse the district court's grant of summary judgment and remand.

{16}    **IT IS SO ORDERED.**


_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**LINDA M. VANZI, Judge**