920 P.2d 1032

**Melquiades (Mel) M. CHAVEZ and Yolanda G. Chavez, co-personal representatives of the estate of Mel Chavez, Jr., deceased, their son, Melquiades (Mel) M. Chavez and Yolanda G. Chavez, individually and as parents and next friends of Mike Chavez and Melanie Chavez, their minor children, Plaintiffs–Appellants,**

v.

**SUNDT CORPORATION, Defendant–Appellee.**

**Nos. 21698, 21868.**

Supreme Court of New Mexico.

July 10, 1996.

Law Offices of William E. Snead, William E. Snead, Albuquerque, for Appellants.

Miller, Stratvert, Torgerson & Schlenker, P.A., Stephen M. Williams, Alice Tomlinson Lorenz, Albuquerque, for Appellee.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., R.E. Thompson, Albuquerque, for Amicus Curiae Assoc. Gen. Contractors of America, et al.

William Carpenter, Michael B. Browde, Albuquerque, for Amicus Curiae N.M. Trial Lawyers.

## OPINION

BACA, Chief Justice.

1. Appellants, Melquiades Chavez and Yolanda Chavez, as co-personal representatives of their son Melquiades Chavez, Jr. (Chavez), deceased, and individually and as parents and next friends of Mike Chavez and Melanie Chavez, their minor children, appeal from a trial court order granting summary judgment in favor of Appellee, Sundt Corporation (Sundt). We address whether Sundt made a prima facie showing that it is entitled to immunity under the exclusivity provisions of the Workers' Compensation Act, NMSA1978, §§ 52–1–6(E), –8, –9 (Repl. Pamp.1991) [hereinafter "the WCA"]. We review this case pursuant to SCRA1986, 12–102(A)(1) (Repl.Pamp.1992) (directing to Supreme Court appeals of cases sounding in contract), and reverse.

### I.

2. In 1992 the City of Albuquerque (the "City") undertook the renovation of Taxiway E at the Albuquerque International Airport (the "Airport"). The City hired Sundt as the general contractor for the renovation project. As part of its contract with the City, Sundt agreed to initiate, maintain, and supervise all safety precautions and programs on the project. Sundt then subcontracted with Gardner–Zemke Corporation ("Gardner–Zemke") to do the electrical work on the project. The City also contracted with Molzen–Corbin & Associates ("Molzen–Corbin"), an architectural-engineering contractor. On October 15, 1992, an employee of Molzen–Corbin directed the airport tower to energize some electrical circuits in order to perform a light check. Chavez, an employee of Gardner–Zemke, was working on the circuits at the time and was electrocuted.

3. On February 11, 1993, Appellants filed suit against Sundt for wrongful death, loss of filial and sibling consortium, and breach of contract. The breach of contract claim is based on Appellant's assertion that Chavez

was a third-party beneficiary of the safety provisions in the contract between Sundt and the City.[1] On April 15, 1993, Sundt moved to dismiss all loss of consortium claims, asserting that New Mexico does not recognize actions for filial or sibling consortium. On May 28 Sundt filed a motion for summary judgment, asserting that the WCA provided an exclusive remedy. On August 12 the trial court determined that Appellant's loss of consortium claims are not compensable under New Mexico law and partially granted the motion to dismiss. On that same day the district court granted Sundt's motion for summary judgment. Appellants now appeal.

## II.

**4.** We address whether the trial court erred when it concluded Sundt was immune from third-party tort liability under the exclusivity provisions of the WCA. In its motion for summary judgment Sundt argued that it is immune from tort liability because Gardner–Zemke's bid price to Sundt included the cost of obtaining workers' compensation coverage for Chavez. Sundt had provided coverage for Chavez. On appeal Sundt argues that it qualifies as a "statutory employer" of Chavez pursuant to Section 52–1–22, and therefore it was entitled to immunity from tort liability under the exclusivity provisions of the WCA. Section 52–1–22 imposes workers' compensation liability on employers of subcontractors that are not independent contractors. We hold that a general contractor seeking to qualify as an employer of a subcontractor's employees under Section 52–1–22 and thus immunity from tort must show that the subcontractor is not an independent contractor and that "the work so procured to be done is a part or process in the trade or business or undertaking of [the general contractor]"; a general contractor seeking immunity as an employer under Section 52–1–22 may not rely solely on the fact that it has provided workers' compensation coverage to its subcontractor's employees by paying the cost of that coverage.

**5.** Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." SCRA1986, 1–056(C) (Repl.Pamp.1992); *see also Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). The movant has the burden of making a prima facie showing of entitlement to summary judgment. *Koenig*, 104 N.M. at 666, 726 P.2d at 343. To have made a prima facie showing that it was Chavez's "employer," Sundt had to have established that Gardner–Zemke was not an independent contractor. We hold that Sundt failed to carry this burden, and therefore we reverse.

6. Section 52–1–22 provides:

As used in the Workers' Compensation Act ..., unless the context otherwise requires, where any employer procures any work to be done wholly or in part for him by a contractor other than an independent contractor and the work so procured to be done is a part or process in the trade or business or undertaking of such employer, then such employer shall be liable to pay all compensation under the Workers' Compensation Act to the same extent as if the work were done without the intervention of such contractor. The work so procured to be done shall not be construed to be "casual employment".

Recently, in the consolidated cases of *Romero v. Shumate Constructors, Inc.*, and *Harger v. Structural Services, Inc.*, 121 N.M. 657, 916 P.2d 1324 (1996) [collectively referred to as *"Romero/Harger"*], we addressed the operation of Section 52–1–22 in the context of general contractors and their subcontractors. *Romero/Harger* is dispositive of the case now before us.

7. In *Romero/Harger* we addressed two issues regarding the application of Section 52–1–22. The first issue was when does workers' compensation liability attach to a party other than the immediate employer. The second issue was whether a "statutory employer," responsible for paying workers' compensation under Section 52–1–22, "may claim the immunity from tort liability gener-

---

**1.** Appellants also filed actions against the City and Molzen–Corbin. These actions have since been settled.

ally conferred on employers by the Act's exclusivity provisions." *Id.* at 661, 916 P.2d at 1328.

### A.

8. In addressing the first issue, we held that workers' compensation liability attaches under Section 52–1–22 when "(1) . . . the work is done by 'a contractor *other than an independent contractor,*' and (2) . . . the work is 'a part or process in the trade or business or undertaking' of the employer of the contractor." *Romero/Harger,* 121 N.M. at 662, 916 P.2d at 1329. That is, when a subcontractor is determined not to be an independent contractor and the work is part of the principal contractor's "undertaking," the principal contractor is an "employer" and is required to provide workers' compensation coverage to employees of the subcontractor.

9. A subcontractor is not an independent contractor when the principal contractor has the "right-to-control" the subcontractor. *Id.* at 663, 916 P.2d at 1330. When a subcontractor is "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control," the subcontractor is not an independent contractor. *Id.* (quoting Restatement (Second) of Agency § 220(1) (1958)).

> The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants.

*Id.* (quoting Restatement (Second) of Agency § 2). An "independent contractor" is "a person who contracts with another to do something for him but who is *not controlled* by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Id.* at 664, 916 P.2d at 1331 (quoting Restatement (Second) of Agency § 2) (emphasis added).

10. The "totality of the circumstances should be considered in determining whether the employer has the right to exercise essential control over the work or workers of a particular contractor," *id.* at 667, 916 P.2d at 1334, including but not limited to such factors as "direct evidence of the exercise of control, or the right to terminate the employment relationship at will, by either party, and without liability," *id.,* "whether the party employed engages in a distinct occupation or business[,] whether or not the work is a part of the employer's regular business," and a host of other factors, *see id.* at 667, 916 P.2d at 1334. "[N]o particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive." *Id.* Further, "[a]ny determination based on only one or two of the factors we have described, and contrary to inferences supported by the remainder of the evidence, would need to be of such a clear and definite nature as to be nearly overwhelming." *Id.* Finally, "the control essential to coordinate the several parts of a larger undertaking is distinguishable from control over the means and manner of performance of a contractor's work." *Id.* at 668, 916 P.2d at 1335.

11. Section 52–1–22 also requires that the work procured be "part or process in the trade or business or undertaking" of the employer. In *Romero/Harger* we agreed with the Court of Appeals' interpretation that "undertaking" be applied in this context in its ordinary dictionary meaning. *Id.* at 664, 916 P.2d at 1331; *see also Romero v. Shumate Constructors, Inc.,* 119 N.M. 58, 69–70, 888 P.2d 940, 951–52 (Ct.App.), *overruled in part by Romero/Harger,* 121 N.M. 657, 916 P.2d 1324 (1996); *Abbott v. Donathon,* 86 N.M. 477, 479, 525 P.2d 404, 406 (Ct.App.1974) (quoting *Webster's Third New International Dictionary* (14th ed. 1961) and stating that "undertaking" is defined as "business, work, or project which one engages in or attempts").

12. In its motion for summary judgment Sundt argued that it is entitled to immunity under the exclusivity provisions of the WCA because it purchased workers' com-

pensation coverage for Chavez, which Sundt argued is indicated by the inclusion of the cost of coverage in the bid price of the contract. Section 52–1–22, however, explicitly requires that for Sundt to be an "employer" under Section 52–1–22, Gardner–Zemke must not be an independent contractor and its work must be part of Sundt's "undertaking." Sundt did not contend that Gardner–Zemke was not an independent contractor, nor did it address the work that Gardner–Zemke performed. Thus Sundt failed to make a prima facie showing that there was no genuine issue of material fact with regard to its contractual relationship with Gardner–Zemke. We therefore reverse the district court's order granting summary judgment.

## B.

■ 13. When a subcontractor is determined to be an independent contractor, the principal contractor cannot be deemed an "employer" under Section 52–1–22. In that case any questions involving immunity would not need to be addressed. Although Sundt has not established that Gardner–Zemke is not an independent contractor, we nevertheless find it helpful to address immunity here in discussing the application of Section 52–1–22.

■ 14. In *Romero/Harger* we addressed whether general contractors "within the general definition of employers who are subject to the Act's terms ... are immune from tort liability under the Act's exclusivity provisions." *Romero/Harger*, 121 N.M. at 665, 916 P.2d at 1332. We held that they are. When a general contractor is determined to be an "employer" under Section 52–1–22, that is, when the subcontractor is determined not to be an independent contractor, immunity is extended to the general contractor if workers' compensation coverage is provided by either the general contractor or the subcontractor.[2] *Id.* at 666, 916 P.2d at 1333.

■ 15. Sundt points to a "modern trend" of extending immunity to a general

contractor when workers' compensation has been provided by its subcontractor who is not an independent contractor. *See Quintana v. University of California*, 111 N.M. 679, 682, 808 P.2d 964, 967 (Ct.App.) (quoting 2A Arthur Larson, *The Law of Workmen's Compensation* § 72.31(d), at 14–191 to –193 (1990), and discussing modern trend to grant prime contractors relief from liability in tort if they contractually assure insurance coverage to employee), *cert. denied*, 111 N.M. 678, 808 P.2d 963 (1991). It argues that the rationale for this trend is to extend immunity to general contractors in order to encourage them to ensure that their subcontractors maintain insurance coverage. *Romero/Harger*, 121 N.M. at 664, 916 P.2d at 1331. While this may be true, we find it more significant that a general contractor determined to be an "employer" under Section 52–1–22 has primary responsibility for providing workers' compensation coverage to employees of subcontractors that are not independent contractors. *See id.* at 666, 916 P.2d at 1333.

16. In passing the WCA, the Legislature intended workers' compensation coverage be provided to employees and therefore requires employers to provide the coverage. In situations where an employer contracts work out to subcontractors that are not independent contractors and provides coverage, the legislative intent is clearly effectuated. When an employer contracts work out to a subcontractor that is not an independent contractor and the subcontractor provides coverage, the legislative intent is equally effectuated.

17. Further, as Professor Larson aptly explains, a practical objective served by these statutes is

> to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers.

---

2. When neither the subcontractor nor the general contractor has provided workers' compensation coverage, the injured employee may sue under the Act or, alternatively, sue in tort. *Romero/Harger*, 121 N.M. at 666, 916 P.2d at 1333.

1C Larson, *supra* § 49.14, at 9–24 to –25 (1995) (explaining to which employer-subcontractor workers' compensation liability attaches when hierarchy of subcontractors is involved) (footnotes omitted). When an employer has fulfilled that responsibility, it is in no different position than if it were the named insured in a situation where work has not been contracted out to subcontractors. We find nothing in Section 52–1–22 that would indicate otherwise. Moreover, Appellant has offered no useful reason why an employer should have a greater liability exposure if he uses a subcontractor that is not an independent contractor than if he had used his own workers.

18. We find no merit in the other issues raised on appeal.

### III.

19. Section 52–1–2 identifies whether a general contractor is an "employer" responsible for providing workers' compensation coverage to employees of a subcontractor that is not an independent contractor. Under *Romero/Harger*, we recognized that a general contractor which meets the requirements of Section 52–1–22 may claim immunity under the exclusivity provisions of the WCA. When a general contractor is determined to be an employer under Section 52–1–22, immunity is not dependent on whether the employer is the named insured when coverage has been provided. In its motion for summary judgment Sundt failed to argue that Gardner–Zemke was not an independent contractor. Summary judgment, therefore, could not have been based on a prima facie showing to that effect. Accordingly, the order granting summary judgment is hereby reversed.

20. **IT IS SO ORDERED.**

RANSOM, FRANCHINI and MINZNER, JJ., concur.