925 P.2d 883

**Bobby VIGIL, Plaintiff–Appellant,**

v.

**DIGITAL EQUIPMENT CORPORATION,**
Defendant–Appellee. ·

No. 16803.

Court of Appeals of New Mexico.

July 23, 1996.

Certiorari Denied Oct. 10, 1996.

Narciso Garcia, Jr., Garcia Law Offices, Albuquerque, for Plaintiff–Appellant.

Neils L. Thompson, Shannon A. Parden, and Madison, Harbour & Mroz, P.A., Albuquerque, for Defendant–Appellee.

## OPINION

PICKARD, Judge.

1. In this case we discuss at what point a temporary employer is entitled to immunity from common law tort claims according to NMSA 1978, Sections 52–1–6(E), and –9 (Repl.Pamp.1991) of the Workers' Compensation Act (the Act). We hold that the temporary employer is immune here because it meets the three-part test of special employer set forth in our cases; it has contractually assured that the general employer will provide workers' compensation coverage, even though there is no specific evidence concerning how the special employer pays for that coverage; and the worker at issue has signed a contract agreeing to look to the general employer for his remedy for on-the-job injuries.

## FACTS

2. Bobby Vigil (Vigil) was employed by Manpower Temporary Services (Manpower). Manpower is a personnel agency that provides temporary workers by contract to employers that need short-term labor. The workers are hired, assigned, promoted, managed, and terminated by Manpower. The contract employer pays a fee to Manpower for each worker. This fee includes money to cover the worker's hourly wages and Manpower's administrative costs.

3. Digital Equipment Corporation (Digital) contracted with Manpower for temporary workers to work at Digital dismantling conveyers. The contract between Digital and Manpower required Manpower to carry workers' compensation insurance for its employees. Digital was to approve the insurance carrier. Manpower was required to show proof of coverage to Digital. The contract also provided that Manpower would not terminate the coverage for its employees without ten days advance notice to Digital.

4. Manpower assigned Vigil to work at Digital. Vigil signed a waiver-of-claim agreement prior to beginning work in which he acknowledged that he was not a Digital employee. As part of the agreement, Vigil agreed that his sole remedy in the event of an injury while on the job at Digital would be in the form of workers' compensation benefits paid by Manpower. Vigil was severely injured while working for Digital. He received workers' compensation benefits from Manpower, then sued Digital and the manufacturer of the conveyer equipment, alleging negligence and products liability.

5. Digital moved for summary judgment on the ground that the Act provided Vigil's exclusive remedy. Subsequently, Digital filed an amended motion for summary judgment, citing Vigil's contract not to sue Digital. The district court granted both motions for summary judgment. Vigil appeals the district court's order. We affirm.

## DISCUSSION

### Standard of Review

6. Summary judgment is appropriately granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. NMRA 1996, 1–056(C); *Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). The moving party must make a prima facie showing that it is entitled to summary judgment. *Roth v. Thompson*, 113 N.M. 331, 334–35, 825 P.2d 1241, 1244–45 (1992). The burden then shifts to the opposing party to demonstrate the existence of disputed facts which require resolution by a fact-finder. *Dow v. Chilili Coop. Ass'n*, 105 N.M. 52, 54, 728 P.2d 462, 464 (1986). If only the legal effect of undisputed facts remains to be determined, summary judgment is proper. *Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990).

### The Exclusivity Provision

7. The Act provides the exclusive remedy against employers for employees injured on the job. *See generally Harger v. Structural Servs., Inc.*, 121 N.M. 657, 664–65,

916 P.2d 1324, 1331–33 (1996) (discussing exclusivity provisions of the Act). However, an employee or the employee's estate may seek redress from a third party even after the employee has received workers' compensation benefits from the employer. *Matkins v. Zero Refrigerated Lines,* 93 N.M. 511, 513, 602 P.2d 195, 197 (Ct.App.1979). The Act provides that an employer who complies with the provisions of the Act and provides workers' compensation benefits to an injured employee is immune from a tort action by the employee or the employee's estate. *See* NMSA 1978, §§ 52–1–8, –9 (Repl. Pamp.1991). This statutory scheme ensures that injured workers are adequately compensated and that employers may avoid excessive tort liability. *See Garcia v. Smith Pipe & Steel Co.,* 107 N.M. 808, 810, 765 P.2d 1176, 1178 (Ct.App.) (purpose of the Act is served where insurance is purchased and the injured worker is compensated), *cert. denied,* 107 N.M. 673, 763 P.2d 689 (1988).

*Payment of Workers' Compensation Insurance*

■ 8. Vigil argues that Digital did not pay for workers' compensation insurance and is not entitled to immunity under the Act. If a contract employer pays for workers' compensation insurance as part of a fee to an intermediate, temporary labor agency, this indirect payment of the cost of workers' compensation insurance entitles the contract employer to immunity from common law and statutory tort liability claims according to the Act. *See Garcia,* 107 N.M. at 809, 765 P.2d at 1177.

9. In *Rivera v. Sagebrush Sales,* 118 N.M. 676, 678, 884 P.2d 832, 834 (Ct.App.), *cert. denied,* 118 N.M. 585, 883 P.2d 1282 (1994), this Court observed that specific provisions in the contract between a temporary agency and an employer of workers assigned through the agency meant that the employer had paid workers' compensation for assigned employees as part of the contract fee. Therefore, once the three-part test for special employer was met, the employer had availed itself of the benefit of immunity from suit under the Act. *Id.* at 678–80, 884 P.2d at 834–36. Likewise, in *Garcia,* this Court

held that the defendant indirectly secured coverage for the plaintiff by reimbursing the plaintiff's employer for its insurance costs. 107 N.M. at 809, 765 P.2d at 1177. These indirect payments were sufficient to invoke the protection of the exclusive remedy provision of the Act. *Id.*

■ 10. Vigil attempts to distinguish the indirect payments for workers' compensation insurance in *Garcia* and *Rivera* from the case at bar. He points to the terms of the contract between Manpower and Digital in support of his argument that Digital did not pay for workers' compensation insurance. Vigil contends that Digital relinquished the right to invoke the exclusivity provision of the Act when it disclaimed any liability as an employer and required Manpower to carry workers' compensation insurance. Vigil argues that no express condition in the contract between Digital and Manpower provided that Digital's payments to Manpower included payments for the purchase of workers' compensation insurance.

11. Vigil submits that this case is similar to *Matkins,* 93 N.M. 511, 602 P.2d 195. In *Matkins,* a carrier company leased a truck and the services of two drivers from the drivers' immediate employer, who owned the truck. The terms of the lease expressly required the owner to maintain workers' compensation insurance to cover the drivers. *Id.* at 513, 602 P.2d at 197. One of the drivers was killed in an accident while driving for the carrier. *Id.* His estate was permitted to maintain a wrongful death action against the carrier. This Court reasoned that by declining to provide workers' compensation coverage for the drivers, the carrier relinquished the right to claim immunity under the exclusivity provisions of the Act. *Id.* at 515, 602 P.2d at 199.

12. Similarly, Vigil claims that the contract between Digital and Manpower specifically required Manpower to purchase and maintain workers' compensation insurance for its employees. Vigil claims that Digital, having relieved itself of the burden of meeting the statutory obligation to provide workers' compensation coverage, may not rely on the Act's exclusivity provisions to prevent a tort action. *See id.*

13. We are not persuaded. A reading of the *Matkins* opinion shows that the Court was equally persuaded by two factors in arriving at its decision that Zero was not an employer and thus could be liable for tort damages. Only one of those factors was the contractual provision declining to provide workers' compensation coverage. Equally important was the other factor, which was that the worker was not an employee under the tests used to determine that status. Thus, as in *Rivera*, 118 N.M. at 678, 884 P.2d at 834, we limit *Matkins* to its facts.

14. The fee scheme between temporary labor agencies and contracting employers permits items such as workers' compensation insurance to be procured through the agency, with the costs passed on to the contracting employer in the full price paid for the workers' wages on any given day. *See Garcia*, 107 N.M. at 810, 765 P.2d at 1178. If the contract employer arranged compliance with the Act relating to the insurance of its workers and ultimately paid for the insurance, the fact that the parties' agreement did not spell out their obligations regarding actual procurement of the insurance is immaterial. *See id.* at 809, 765 P.2d at 1177; *Quintana v. University of Cal.*, 111 N.M. 679, 683, 808 P.2d 964, 968 (Ct.App.), *cert. denied*, 111 N.M. 678, 808 P.2d 963 (1991), *overruled on other grounds by Harger*, 121 N.M. at 666 n. 3, 916 P.2d at 1333 n. 3. Digital required Manpower to purchase workers' compensation insurance from a carrier approved by Digital. Manpower was required to show certificates of insurance showing the amount of coverage. The terms of the agreement specified that the policy could not be terminated without a minimum ten-day notice to Digital. These contractual terms between Digital and Manpower indicate that Digital was aware of its potential exposure to claims from Manpower employees and negotiated the contract to provide benefits to temporary employees in the event of an injury.

15. In support of its motion for summary judgment, Digital presented evidence in the form of its contract implying that it paid the costs of workers' compensation insurance indirectly as part of the fee it paid to Manpower. Vigil presented no evidence contradicting this prima facie evidence of indirect payment. To the extent that Vigil's suit was based on Digital's failure to pay workers' compensation insurance, summary judgment was appropriately granted.

*Special Employment*

■ 16. Vigil contends that the employment relationship between Digital and Vigil did not meet the requirements for a finding of special employment. *See Rivera*, 118 N.M. at 678–79, 884 P.2d at 834–35 (special employer liable for workers' compensation benefits when: (1) employee has contract of hire with special employer; (2) work done is that of special employer; and (3) special employer has right to control details of work). Vigil argues that under the terms of the contract with Digital, he was an employee of Manpower. He denies that Digital had the right to control the details of his work. He submits that whether or not Digital controlled the details of his work is an issue of material fact, precluding summary judgment.

17. This case presents a situation similar to that found in *Rivera*. It is subject to the same analysis. There is no dispute that Manpower was Vigil's direct employer. *See Rivera*, 118 N.M. at 678, 884 P.2d at 834. A special employer "borrows" a worker from another employer and directs the borrowed worker in specific work details. *See Rivera*, 118 N.M. at 681, 884 P.2d at 837. We conclude that Digital was Vigil's special employer at the time of the accident. *See id.*

18. Vigil, as an employee of Manpower, knew that he would be hired out to various employers on a temporary basis. He signed a contract with Digital for the performance of temporary labor for Digital. Digital made a prima facie showing of an express contract between Vigil and Digital for temporary employment.

19. Moreover, Vigil reported for work at Digital and submitted to the supervision of a Digital employee for eight months prior to the accident. Vigil was paid according to the work he did for Digital. If Vigil's work was unsatisfactory, Digital had the power to terminate Vigil's temporary employment at Digital. These facts indicate that there was an

implied contract for Vigil's temporary employment at Digital.

20. The parties do not dispute that the work performed by Vigil at Digital was primarily the work of Digital. We are unpersuaded by Vigil's argument, raised in his supplemental brief, that the work he was doing was not that of Digital because Digital is not in the business of dismantling conveyors. Manpower is in the business of recruiting and managing temporary workers. Digital requires conveyors for its ongoing operations. When Vigil was injured by the conveyor, he was on Digital's premises, was supervised by Digital employees, and was performing tasks necessary to Digital's operations. Vigil was doing the work of Digital, not Manpower, when he was injured. *See Rivera*, 118 N.M. at 679, 884 P.2d at 835.

21. In *Rivera*, we noted that the fact that the special employer's supervision was not continuous and was not material to a determination of control. 118 N.M. at 679–80, 884 P.2d at 835–36. The type of work performed by the plaintiff in *Rivera* did not require constant supervision or the continual exercise of the employer's right to control. *Id.* Similarly, Vigil was instructed by Digital employees, but performed his duties without constant supervision. Digital reserved the right to dismiss Vigil if his work was unsatisfactory, indicating that Digital was the final authority regarding quality and acceptability of the work performed at Digital by Vigil.

22. Under the "special employee" analysis, if Digital paid for workers' compensation benefits, and if Vigil made a contract of hire, express or implied, with Digital, performed Digital's work, and Digital had the right to control the details of Vigil's work, then Digital is a special employer and is entitled to immunity from tort liability under the Act. *See Rivera*, 118 N.M. at 679, 884 P.2d at 835; 1B Arthur Larson, *The Law of Workmen's Compensation* § 48.23, 8–515 to –532 (1995). Vigil failed to rebut Digital's showing that it controlled and directed Vigil's work, and summary judgment on this issue was proper.

### Exculpatory Contract

23. In light of our affirmance of the summary judgment on the exclusive-remedy ground, we need not review the district court's grant of summary judgment based on this ground.

### Harger

24. At our request, the parties responded to our Supreme Court's recent decision in *Harger*, 121 N.M. 657, 916 P.2d 1324, in supplemental briefing. *Harger* reversed this Court's decision in *Romero v. Shumate Constructors, Inc.*, 119 N.M. 58, 66–67, 888 P.2d 940, 948–49 (Ct.App.1994), *certs. granted*, 119 N.M. 21, 888 P.2d 467 (1995). *Harger*, however, did not question this Court's decision or analysis in *Rivera*, in which we clearly separated the concepts of special or borrowed employers from the concept of statutory employees. *Rivera*, 118 N.M. at 678, 884 P.2d at 834. *Harger* did not discuss the situation of borrowed or special employees that is at issue in *Rivera* or this case. In fact, in *Harger*, the Court agreed with this Court's holding in *Rivera* that an employer may satisfy its obligations under the Act by providing workers' compensation insurance through a third party. *Harger*, 121 N.M. at 666, 916 P.2d at 1333; *see Quintana*, 111 N.M. at 683, 808 P.2d at 968. Thus, *Harger* does not help Vigil in this case.

### CONCLUSION

25. We affirm the district court's order granting summary judgment to Digital.

26. **IT IS SO ORDERED.**

HARTZ and WECHSLER, JJ., concur.