2006-NMCA-121

143 P.3d 187

**Doris STREET and Michael Street, Plaintiffs–Appellants,**

v.

**ALPHA CONSTRUCTION SERVICES, Defendant–Appellee.**

No. 25,540.

Court of Appeals of New Mexico.

June 22, 2006.

Certiorari Granted, No. 29,922, Sept. 21, 2006.

Law Offices of James P. Lyle, P.C., James P. Lyle, Albuquerque, NM, for Appellants.

Civerolo, Gralow, Hill & Curtis, William P. Gralow, Lisa E. Pullen, Megan Day Hill, Albuquerque, NM, for Appellee.

## OPINION

BUSTAMANTE, Chief Judge.

{1} In this case we discuss a variant of co-employee immunity from common law suits under the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2005) (the Act). Specifically, we address whether a contractor that is the direct employer of special employees is immune under the Act from common law suits brought by other special employees working for the same special employer, but under a different contract with a different direct employer. We hold that the contractor is not a special employee in this case, is not a co-employee for purposes of the Act, and thus is not immune from suit.

## BACKGROUND

{2} Plaintiff Doris Street was an employee of Technadyne Engineering Consultants, a subsidiary of Jobs Plus. Plaintiff provided administrative support services at Sandia Corporation (Sandia) pursuant to a contract between Jobs Plus and Sandia. Defendant Alpha Construction Services (Alpha) is a roofing company that provides employees to Sandia to do roofing jobs through a contract between Sandia and Alpha. Alpha employees work at Sandia, under the supervision of

Sandia almost every day of the year. Alpha employees report to work at Sandia, perform their jobs under the direction of a Sandia supervisor, receive safety training at Sandia, and use Sandia-supplied equipment and materials for the roofing projects.

{3} On April 9, 2003, Plaintiff was working in a building at Sandia. On that same day, the roof of that building was being repaired by employees of Alpha. The roofers, named only as "John Doe" Defendants, applied a roofing material, later determined to be Geogard, to the roof. Plaintiff alleged that she smelled an unusual odor in the building, and as the smell became stronger she felt burning in her airway. Plaintiff further alleged that as a result of inhaling chemicals from the roofing material, she sustained permanent airway and respiratory system injury. Plaintiff received treatment for injuries allegedly sustained from inhaling fumes from the roofing materials. Plaintiff applied for and was denied workers' compensation coverage under her direct employer, Technadyne. Plaintiff did not appeal the denial of workers' compensation benefits.

{4} Plaintiff filed suit for damages against Sandia and Alpha, alleging that she suffered injuries from inhaling the fumes of the roofing material, and that Sandia and Alpha were negligent in the use of the roofing materials. Sandia and Alpha both moved for summary judgment. Alpha argued that it was a co-employee of Plaintiff for purposes of the Act, and therefore entitled to immunity from suit. The district court granted summary judgment in favor of Alpha, and Plaintiff appeals. In a related appeal, we affirmed by memorandum opinion the district court's grant of summary judgment in favor of Sandia, holding that Sandia was a special employer of Plaintiff, and therefore her exclusive remedy against Sandia was through the Act.

## DISCUSSION

{5} Plaintiff argues that the district court erred in granting summary judgment to Alpha because in New Mexico, contractors who employ employees who in turn share the same special employer through different contractual relations are not "co-employees" of the other special employees under the Act, and therefore are not entitled to protection from suit under the exclusivity provisions. This appears to be an issue of first impression in New Mexico. Plaintiff also raises several other arguments on appeal, essentially arguing that summary judgment was improper because Plaintiff was not allowed adequate discovery. Because we reverse the grant of summary judgment on the first issue, we do not reach the discovery issues.

{6} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The issue on appeal is whether [Defendant] was entitled to [judgment] . . . as a matter of law. We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted). Although Plaintiff makes allegations of disputed material facts based on a lack of discovery, none are material to the resolution of the case. In this case, we must determine whether Plaintiff and Alpha are co-employees under the Act. To the extent this requires us to interpret the Act, we do so de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (stating that interpretation of a statute is a question of law which an appellate court reviews de novo).

{7} We begin with the proposition that the Act "provides the exclusive remedy against employers for employees injured on the job." *Vigil v. Digital Equip. Corp.*, 1996–NMCA–100, ¶ 7, 122 N.M. 417, 925 P.2d 883. The exclusivity of compensation under the Act rests on the existence of the employment relationship. *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 680, 884 P.2d 832, 836 (Ct.App.1994). The Act provides that an employer who complies with the act "shall not be subject to any other liability whatsoever . . . and all causes of action . . . and common-law rights and remedies . . . are hereby abolished except as provided in the [Act]." Section 52–1–8. Alpha's argument, which the district court embraced, is based on the fact that employees are also immune from suit in tort by co-employees under the exclusivity provisions of the Act. *See* §§ 52–1–6(E), and –8. "[A]n employee of an employer who has complied with the requirements

of the Act is not subject to liability under the common law for the injury or death of a coemployee." *Matkins v. Zero Refrigerated Lines, Inc.*, 93 N.M. 511, 517, 602 P.2d 195, 201 (Ct.App.1979). The purpose of the Act is to ensure "that injured workers are adequately compensated and that employers may avoid excessive tort liability." *Vigil*, 1996–NMCA–100, ¶ 7, 122 N.M. 417, 925 P.2d 883. However, an employee "may seek redress from a third party even after the employee has received workers' compensation benefits from the employer." *Id.*

{8} Plaintiff argues that the district court erred in granting summary judgment because special employees and a contractor, such as Plaintiff and Alpha, are not co-employees under the Act. Plaintiff relies on *Romero v. Shumate Constructors, Inc.*, 119 N.M. 58, 888 P.2d 940 (Ct.App.1994), *rev'd in part and aff'd in part by Harger v. Structural Services, Inc.*, 121 N.M. 657, 669, 916 P.2d 1324, 1336 (1996), for the proposition that statutory co-employees of a general contractor do not enjoy immunity from common law actions against each other under the Act, and therefore the same rule applies to special employees. Plaintiff relies on the following language in *Romero:*

> There is no New Mexico precedent creating a concept of co-statutory employee or using the co-employee concept in a context where an employee of one subcontractor of a general contractor sues another subcontractor in tort. There is also very little support for this idea in other jurisdictions. 2A Larson, *supra* § 72.32. The reason as given by Professor Larson is that "the general contractor has a statutory liability to the subcontractor's employee, actual or potential, while the subcontractor has no comparable statutory liability to the general contractor's employee." *Id.* § 72.32, at 14–269 to –274. In other words, the quid pro quo for the protection afforded to the workers, whether that protection is used or not, provides the basis for the immunity granted by the [Act].

*Id.* at 70, 888 P.2d at 952. Although in *Romero* we addressed the issue of statutory employees, we see no reason why the reasoning would not apply to the special employee

situation as well. Importantly, Alpha does not provide any meaningful distinction or explanation why this language in *Romero* should not apply equally to special employees.

{9} Larson's Workers' Compensation Law states that:

> The reason for the employer's immunity is the *quid pro quo* by which the employer gives up its normal defenses and assumes automatic liability, while the employee gives up his or her right to common-law verdicts. This reasoning can be extended to the tortfeasor coemployee, who also is involved in this compromise of rights. Perhaps, so the argument goes, one of the things the coemployee is entitled to expect in return for what he or she has given up is freedom from common-law suits based on industrial accidents in which that coemployee is at fault.

6 Arthur Larson, Larson's Workers' Compensation Law § 111.03[2], at 111–12 to –13 (2005).

■ {10} Stated another way, liability for workers' compensation benefits "runs up the ladder" but "not down." *Thompson v. Mehlhaff,* 698 N.W.2d 512, 518 (S.D.2005). The special or statutory employer is on the hook to provide benefits to an employee, and therefore receives the *quid pro quo* of immunity from suit from special or statutory employees. *See id.* (stating that the general contractor receives immunity because it is the "back-up provider of worker's compensation coverage"). However, the same is not true of employers of either statutory employees or special employees. In cases where an employee of a general contractor or a subcontractor sues another subcontractor in negligence, the majority of jurisdictions hold that the subcontractor being sued is a third party amenable to suit. *Id.* The reason, as stated in Larson's, is that while the general contractor has a statutory liability to the subcontractor's employee, the subcontractor has no comparable statutory liability to the general contractor's employee. Larson, *supra*, § 111.04[2]-[3] (2002) (footnote omitted). In short, immunity follows responsibility to pay compensation under the Act.

{11} Similarly, a special employer has a workers' compensation liability to the direct employer's employees, and therefore receives the *quid pro quo* of immunity from suit. However, direct employers—such as Alpha and Technadyne here—have no comparable liability to each other's employees, or to the employees of other subcontractors, and therefore are not entitled to the *quid pro quo* of immunity from suit. In this case, Sandia, as the special employer of both Plaintiff and Alpha's employees, has a potential liability to each for workers' compensation benefits, and therefore is afforded protection from suit as the special employer. However, Alpha has no comparable liability to Technadyne or Plaintiff, and therefore is not entitled to the *quid pro quo* of immunity from suit. Applying this rationale to the present case, and considering our holding in *Romero,* we conclude that the subcontractor or direct employer, in this case Alpha, who neither provided nor was required to provide insurance protections for employees of Technadyne, is not entitled to immunity from suit under the exclusivity provisions of the Act. This outcome comports with Larson's explanation of who are generally considered "persons in the same employ." Larson, *supra,* § 111.03[4]. Referring to persons such as Alpha's and Technadyne's employees, Larson notes:

> A lent employee is a coemployee of the borrowing employer's employees if the conditions of lent employment are met. But subcontractors on the same project and their employees are not immune as coemployees of an employee of the general contractor, nor is a wholly owned subsidiary of the corporate employer, conducting business for the employer. The employee of a general contractor or higher-tier subcontractor may be immune as a coemployee from suit by an injured employee of a lower-tier subcontractor, however.

Larson, *supra,* § 111.03[4][e], at 111–18 to – 19 (footnotes omitted).

{12} Alpha argues that the district court's grant of summary judgment should be upheld because the plain language of the Act and the purpose of the Act support a finding that special employees are co-employees for purposes of the Act. According to Alpha, to hold otherwise eliminates rights conferred to by the Act, and goes against the policy enunciated by the Legislature in the Act. We disagree.

{13} The plain language of the Act does not provide for immunity between special employees and direct employers of other special employees. In addressing this issue, Larson notes that the typical workers' compensation statute:

> takes all the time and words it needs to say precisely what it means. If it wants to say that the employer is immune from common-law suit, it says so in plain English. If it wants to go further and say that coemployees shall also be immune, it is easy enough to say that in plain English also. And if it wants to go still further and say that all contractors, subcontractors and their employees on the same project are immune, the English language is quite capable of rising to the task of expressing that intention in unmistakable terms. Why then, when a statute has gone no further than the first of these three types, should courts take it on themselves to announce that the legislature really meant to say what is contained in the second type, or even the third type?

Larson, *supra,* § 111.04[3], at 111–44 (footnote omitted). The plain language of our Act goes as far as the second of these types. It does not, however, support Alpha's position that special co-employees are afforded protection under the exclusivity provisions or the dissent's "umbrella of immunity" for all workers on the same project. Absent express language in the Act, and agreeing with existing precedent, we conclude that the holding in *Romero* is applicable in this case. We therefore hold that Alpha and Plaintiff are not co-employees for purposes of the Act. Alpha is not entitled to protection from common law suit by Plaintiff under the exclusivity provisions of the Act, and therefore we remand for proceedings consistent with this opinion. Since we remand on this issue, we do not need to address Plaintiff's other claims of error in the grant of summary judgment.

{14} **IT IS SO ORDERED.**

I CONCUR: LYNN PICKARD, Judge.

RODERICK T. KENNEDY, Judge (dissenting).

KENNEDY, Judge (dissenting).

{15} Where liability may go up and down the metaphorical ladder, the majority will not let it do so if employees are on different ends of a rung. I would decline to open tort liability between co-employees of a general contractor, where the general contractor is arguably the special employer of the employees of any number of subcontractors, who themselves are apparently required to obtain coverage under the Workers' Compensation Act.

{16} Plaintiff and Alpha do not have an employment relationship under the Act. Alpha has not insured against its liability to pay compensation benefits to Plaintiff should it injure her. Current case law only deals with but one rail of the metaphorical ladder. For example, *Harger* involved the distinction between independent contractors and employees, where injured workers were trying to pursue remedies and liability up the ladder. *Harger*, 121 N.M. at 667, 916 P.2d at 1334. Another example is *Chavez*, where the general contractor was attempting to extend immunity from all persons down the ladder, and the case between the plaintiff and the other contractor had settled. 1996–NMSC–046, ¶¶ 1–3, ¶ 2 n. 1, 122 N.M. 78, 920 P.2d 1032. These single rail cases do not reflect the current state of business where a general contractor or large special/statutory employer may employ many subcontractors to handle different aspects of its work, requiring all to procure compensation coverage under the Act, or doing so itself. The question of first impression is whether an employee, covered by her special employer under the Act, can proceed in tort against another special employee only because that contractor, who is also an employee, did not procure workers' compensation coverage for injuries to employees who were not their own.

{17} "The Act provides the exclusive remedy against employers for employees injured on the job." *Vigil*, 1996–NMCA–100, ¶ 7, 122 N.M. 417, 925 P.2d 883. "[A] practical objective served by these statutes is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." *Chavez*, 1996–NMSC–046, ¶ 17, 122 N.M. 78, 920 P.2d 1032 (internal quotation marks and citation omitted). *Chavez* applies this to the hierarchy of general and subcontractors; I see no reason that it should not apply to all parallel hierarchies of employment.

{18} Workers can have multiple employers, each of which is immune from suit. *Rivera*, 118 N.M. at 677, 884 P.2d at 833. In this case, both Plaintiff and Alpha are employees of Sandia. Employees of the same employer are as immune as the employer from any cause of action that would be covered under the Act, as long as the employer is insured under the Act. Sections 52–1–6(E), –8. The payment for insurance under the Act by an employer, whether directly or indirectly through a contractor, triggers the immunity. *Vigil*, 1996–NMCA–100, ¶ 8, 122 N.M. 417, 925 P.2d 883.

{19} I cannot agree to establishing third-party tort liability against Alpha for Plaintiff's benefit. Because Alpha is a contractor, I believe Alpha is also a special co-employee. Even under the current scheme, Sandia or its insurer would be entitled to reimbursement for any damages it paid to Plaintiff (if Plaintiff were to recover from Alpha). *See, e.g., Matkins*, 93 N.M. at 513, 602 P.2d at 197. However, while *Matkins* deals with liability of third parties, Alpha, Technadyne, and Plaintiff are all employed by Sandia. Within an employment relationship, where Sandia is ultimately responsible for benefits, there is no reason to institute a new system of third-party liability within the umbrella of Sandia's coverage. All co-employees enjoy immunity under the Act. "[O]ne of the things the coemployee is entitled to expect in return for what he or she has given up is freedom from common-law suits based on … accidents in which that coemployee is at fault." Larson, *supra*, § 111.03[2]; *see also* § 52–1–6(E), –8. Emphasizing that liability " 'runs up the ladder' " but " 'not down,' " the majority

have failed to acknowledge that the relationship between Plaintiff and Alpha is horizontal across the rungs. Maj. Op. ¶ 10. Both look up, Plaintiff for benefits, Alpha for relief from liability.

{20} Here, the majority wants to regard Alpha as outside the umbrella of immunity between co-employees because the Act does not specifically include parallel subcontractors as "co-employees" in order to confer immunity under the Act. Maj. Op. ¶ 13. However, all workers give up the right to claim damages in tort under the Act as their part of the quid pro quo of employment with covered employers like Sandia. When neither the subcontractor nor the general contractor in a purely vertical case has provided workers' compensation insurance coverage, the injured employee may sue under the Act or, alternatively, sue in tort. *Harger*, 121 N.M. at 666, 916 P.2d at 1333. Contractual relationships in a big operation can extend to many subcontractors, and all of whose employees can be special employees of the top contractor. Absent the majority's reliance on *Larson* as a shibboleth for allowing parallel subcontractors to be sued in tort, there is no basis for doing so. The majority's reliance upon a lack of inclusion in the statute, also based on *Larson*, is likewise no reason to assume an exclusion of subcontractors, particularly when they are co-employees.

{21} The majority also conveniently ignore the workers' explicit sacrifice of a remedy in tort for presumptive coverage for injuries sustained at work. *See* § 52–1–6(C), (D) (worker is presumed to accept provisions of the Act and agree to forego all tort remedies if his or her employer is covered under the Act). When the employee who is injured at work is covered under the Act, and an employer provides coverage, the language of the Act provides an exclusive remedy for workers injured on the job. *See id.* "[E]xclusive" should be just that. Coverage should extend from the general special employer to the bottom of every ladder-rail. If the "plain language" of the Act failing to contain specific reference to subcontractors, their employees, or "special coemployees" is all we have to go on, the majority's discussion where Alpha is subject to third-party liability be-

cause they did not specifically insure is unnecessary. It is included just to create a distinction without a difference. The Act itself makes self-insuring against inter-employee liability superfluous by giving immunity to co-employees.

{22} My reading of the Act says that all special co-employees enjoy among themselves the special employer's immunity from suit as long as that special employer has complied with the Act, and all co-employees are doing the master's bidding. Whether that co-employee is direct, special, lent, or statutorily employed, or a natural, corporate or otherwise legally-defined person, is not material. If Plaintiff, as Sandia's employee, had slipped and fallen on the job in a puddle left by Sandia's own janitor, the result should be no different. The majority, however, would allow third-party liability against Sandia's janitorial service. Sections 52–1–6(E), –8, are sufficiently specific to make exclusive remedies and immunity from suit apply between co-employees of any stripe. Alpha, as a co-employee under the Act, has as much a right to look "up the ladder" to ensure its immunity from suit as Plaintiff has the right to payment of benefits under the exclusive provisions of the Act.