FILED
United States Court of Appeals
Tenth Circuit

November 14, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN ENSEY,

        Plaintiff - Appellant,

v.

OZZIE'S PIPELINE PADDER, INC.,

        Defendant - Appellee.

No. 10-2128

(D. New Mexico)

(D.C. No. 1:08-CV-00801-JAP-CG)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **HOLMES**, Circuit Judges.

Plaintiff John Ensey was employed by both Defendant Ozzie's Pipeline Padder, Inc. (Ozzie's) and Rockford Corporation (Rockford) when he was severely injured. He sued Ozzie's but was denied relief on the ground that Ozzie's was protected by the exclusive-remedy provision of the New Mexico Workers' Compensation Act. Mr. Ensey appeals, contending that Ozzie's could not invoke the exclusivity provision because it failed to show that it contributed

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to paying for the workers' compensation policy obtained by co-employer Rockford.

We have jurisdiction under 28 U.S.C. § 1291 and affirm. Under New Mexico law Ozzie's was protected by the exclusivity provision because its contract with Rockford required Rockford to obtain workers' compensation insurance for Mr. Ensey and Mr. Ensey failed to produce evidence to overcome the inference that Ozzie's therefore contributed to paying the insurance premium. *See Vigil v. Digital Equip. Corp.*, 925 P.2d 883, 886 (N.M. Ct. App. 1996).

## I.    BACKGROUND

### A.    Facts

Ozzie's manufactures pipeline padding machines. At the time relevant to this case, it did not sell the machines but leased them and trained its employees to operate them. It trained Mr. Ensey in Wyoming starting in August 2005. In July 2005 Rockford entered into a contract with Ozzie's to lease one or two padding machines. The contract said that Ozzie's would provide names of qualified operators, who would be paid their wages and benefits by Rockford. Rockford would also be "responsible for applicable workers['] compensation for the Operator and [for providing] a certificate of insurance evidencing workers['] compensation coverage for a minimum of $50,000 . . . for each employee." Aplt. App. pt. 2 at 172.

-2-

Ozzie's sent Mr. Ensey to work on a Rockford project in southern New Mexico in September 2005. On October 19, 2005, he was badly injured when pulled into a padding machine

## B. Court Proceedings

Mr. Ensey sued Ozzie's in the United States District Court for the District of New Mexico. Ozzie's raised as a defense the exclusive-remedy provision of the Workers' Compensation Act, which states that "[a]ny employer who has complied with the provisions of the Workers' Compensation Act . . . relating to insurance . . . shall not be subject to any other liability whatsoever for the death of or personal injury to any employee, except as provided in the Workers' Compensation Act." N.M. Stat. Ann. § 52-1-8 (1978). Ozzie's asserted that it was protected by the exclusivity provision because (1) Mr. Ensey was an employee of Ozzie's when the accident occurred and (2) Ozzie's had procured workers' compensation insurance for Mr. Ensey by contractually requiring Rockford to obtain such insurance for Mr. Ensey.

The district court accepted Ozzie's legal argument that its contract with Rockford protected Ozzie's under the exclusivity provision if Mr. Ensey was an employee of Ozzie's and Rockford. But it ruled that a jury would need to resolve the disputed fact of whether Mr. Ensey was their employee. After a trial on the issue, the jury rendered a verdict that Mr. Ensey was an employee of both Ozzie's and Rockford, thereby resulting in a judgment for Ozzie's.

## II.    DISCUSSION

On appeal Mr. Ensey does not challenge the jury's verdict that he was an employee of both Ozzie's and Rockford at the time of his accident. His sole issue is that the district court erred in ruling that Ozzie's was protected by the exclusivity provision of the Workers' Compensation Act if he was a dual employee of the two companies. Because that ruling did not require the court to resolve any disputed questions of fact, the issue before us is solely a matter of law, which we review de novo. *See US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1118 (10th Cir. 2007).

When this court must resolve an issue of state law, our task is to predict how the highest court of that state would rule on the issue. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008). We can rely, however, on a decision of a state's intermediate appellate court if there is no reason to doubt that it reflects state law. *See id.* In our view, the result in this case is compelled by the New Mexico Court of Appeals' decision in *Vigil*. In that case the worker was employed by a personnel agency, Manpower Temporary Services, that contracted with Digital Equipment Corporation to supply temporary workers. *See Vigil*, 925 P.2d at 884. Under the contract, Digital paid Manpower a fee for each worker, while Manpower paid the worker's salary and was "required . . . to carry workers' compensation insurance for its employees" and "show proof of coverage to

Digital." *Id.* After the worker was injured on the job, he sued Digital and the trial court granted Digital summary judgment. *See id.*

The court of appeals affirmed. *See id.* at 887. It held that even though the worker was an employee of Manpower, he was also a special employee of Digital, because he had a contract with Digital, he was performing Digital's work, and Digital had the right to control his work. *See id.* at 886–87. On the issue relevant to this appeal, the court held that Digital complied with the Workers' Compensation Act's insurance requirement by contractually ensuring that Manpower would purchase workers' compensation insurance for the employee. *See id.* at 886. Digital was therefore entitled to "invoke the protection of the exclusive remedy provision of the Act." *Id.* at 885.

The worker in *Vigil* argued that Digital could not enjoy the protections of the Workers' Compensation Act because it had not paid for his workers' compensation insurance. *See id.* Although New Mexico courts had already held that a special employer could comply with the Act by ensuring, in a contract with the general employer, that the employee received workers' compensation insurance, the worker attempted to distinguish these cases on the ground that the contract between Manpower and Digital did not explicitly provide that "Digital's payments to Manpower included payments for the purchase of workers' compensation insurance." *Id.* at 885. The appeals court rejected the argument, holding that it sufficed that Digital had been "aware of its potential exposure to

claims from" the employees of the general employer and had "negotiated the contract to provide benefits to temporary employees in the event of an injury." *Id.* at 886. It was not necessary "that the parties' agreement . . . spell out their obligations regarding actual procurement of the insurance," *id*, or that there be "specific evidence concerning how the special employer pays for that coverage." *Id.* at 884. The court held that the contractual provision alone would suffice, saying that Digital had "presented evidence in the form of its contract implying that it paid the costs of workers' compensation insurance indirectly as part of the fee it paid to Manpower." *Id*. at 886. It recognized that this evidence could be rebutted, but it affirmed because the worker "presented no evidence contradicting this prima facie evidence of indirect payment." *Id.*

The essentials of this case are indistinguishable from *Vigil.* Mr. Ensey had two employers, one of which sent him to the other on a temporary basis. The two employers entered into a contract that required one to carry workers' compensation insurance for the worker (and provide proof of that insurance). *See id.* at 884. These contractual provisions are prima facie evidence that Ozzie's knew of its potential exposure to tort claims from its employees and had indirectly paid for their workers' compensation coverage. *See id.* at 886.

Mr. Ensey failed to present evidence that Ozzie's had not paid indirectly for that insurance coverage. *See id.* at 886.[1]

We reject Mr. Ensey's arguments that *Vigil* does not govern his case. First, his reliance on *Harger v. Structural Services, Inc.*, 916 P.2d 1324, 1333 (N.M. 1996) is misplaced. He argues that *Harger* shows that a general contractor cannot benefit from the exclusivity provisions of the Workers' Compensation Act by contractually ensuring that a subcontractor buys insurance for its employee. But, as *Vigil* pointed out, 925 P.2d at 887, the *Harger* ruling applies only to employees in a statutory employment relationship, not borrowed or special employees, as Mr. Ensey was. *See Hamberg v. Sandia Corp.*, 179 P.3d 1209, 1211 (N.M. 2008) (" A statutory employment relationship exists when any employer procures any work to be done wholly or in part for him by a contractor other than an independent contractor and the work so procured to be done is a part or process in the trade or business or undertaking of such employer." (internal quotation marks omitted)).

Second, we reject Mr. Ensey's claim that we are bound by *Matkins v. Zero Refrigerated Lines, Inc.*, 602 P.2d 195 (N.M. Ct. App. 1979). That case is

---

[1]At oral argument, counsel for Mr. Ensey contended that there is such contradicting evidence. But this contention came too late. We will not consider an argument raised for the first time at oral argument. *See Mondragón v. Thompson*, 519 F.3d 1078, 1081 n.2 (10th Cir. 2008).

inapplicable here because the defendant was not an employer of the plaintiff. *Vigil* limited *Matkins* to its facts, *see* 925 P.2d at 886, and we must do the same.

Third, we are not persuaded by Mr. Ensey's argument that *Vigil* applies only to leased-employee situations. True, the leading dual-employer cases of *Vigil*, 925 P.2d at 884, *Rivera v. Sagebrush Sales, Inc.*, 884 P.2d 832, 835 (N.M. Ct. App. 1994), and *Hamberg*, 162 P.3d at 911, involved staffing agencies. But Ozzie's acted in essence as a staffing agency by loaning out Mr. Ensey's services on a temporary basis until the Rockford project was concluded. And more importantly, the rationale of these cases is not limited to that context. The underlying principle is that an employer complies with its responsibilities under the Workers' Compensation Act when it contractually ensures that the co-employer will purchase insurance. As *Rivera* noted, "[I]t is the employee's receipt of the quid pro quo—workers' compensation coverage with its attendant quick recovery and simplified procedures—which justifies the loss of the right to bring a tort case." 884 P.2d at 836. So long as the employee "received the quid pro quo in part through [the employer's] efforts to insure that [its co-employer's] employees would be compensated through the worker's compensation system," it complied with the Act and the lawsuit is barred. *Id.* Nothing about this principle is dependent on an employee-leasing arrangement. *See Harger*, 916 P.2d at 1333 ("an employer may satisfy its obligation to comply with the insurance provisions by providing insurance through a third party.").

Finally, Mr. Ensey suggests that *Vigil* should apply in only one direction—when the special employer (here, Rockford) requires the general employer (Ozzie's) to obtain workers' compensation insurance. But the essential element is whether the employer claiming the benefits of exclusivity has contributed to the workers' compensation premiums. That contribution may be more obvious when the employer claiming exclusivity is making payments to the other employer, as when the special employer leases an employee from the general employer. But when the money flows in the opposite direction (in our case, from Rockford to Ozzie's, which is seeking the benefit of exclusivity), basic economics still tells us that Ozzie's likely paid for the requirement that Rockford procure workers' compensation insurance by reducing what Rockford would otherwise have to pay Ozzie's to lease the padding machine. It is unusual for a contractual provision to come free to the party benefitting from the provision, although, as in *Vigil*, the worker is entitled to try to prove that in a specific case.

## III.   CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge